**ENCOMPASS OFFICE SOLUTIONS, INC., Plaintiff,**

v.

**INGENIX, INC., Unitedhealth Group, Inc., and United Healthcare Services, Inc., Defendants.**

**Case No. 4:10–cv–00096.**

United States District Court,
E.D. Texas,
Sherman Division.

March 31, 2011.

Gregory William Curry, Adrienne Elizabeth Dominguez, Jill Campbell Penn, William L. Banowsky, Thompson & Knight, Dallas, TX, for Plaintiff.

Kathy P. Josephson, Charles Chejfec, John W. Reale, Kathy L. Kottos, Katten Muchin Rosenman LLP, Chicago, IL, Christopher Shawn Cleveland, SNR Denton U.S. LLP, Dallas, TX, Matthew D. Orwig, Sonnenschein Nath & Rosenthal LLP, Dallas, TX, for Defendants.

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

RICHARD A. SCHELL, District Judge.

Before the court is the "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (Dkt. 41). For the following reasons, the Defendants' motion is denied in part and granted in part.

## I. BACKGROUND

This case arises out of a dispute between a medical provider, Plaintiff Encompass Office Solutions, Inc. (Encompass), and Defendants Ingenix, Inc. (Ingenix), UnitedHealth Group, Inc., and United Healthcare Services, Inc. (United) (collectively: Defendants) over claims for reimbursement of services that Encompass has provided to United's insureds.

Encompass provides equipment and nurses to assist physicians in performing surgical procedures in the physicians' own offices rather than in a traditional hospital or ambulatory surgery center (ASC). The physician and his or her patient make the choice of whether to perform the procedure in the physician's office and whether to use Encompass's services.

United provides health insurance policies to consumers and also administers health insurance plans offered by companies to their employees. Encompass's patients include those who have entered into contracts for health insurance coverage with United. Encompass receives an "Assignment of Benefits" from each of its patients and, pursuant to those assignments, Encompass has submitted hundreds of requests for reimbursement to United for services rendered to United's insureds.

United began reimbursing Encompass in 2007, but since June of 2009, United has stopped paying many of Encompass's claims. On July 27, 2009, Encompass received a letter from a representative of Ingenix, a wholly-owned subsidiary of United, demanding that Encompass return $2,051,896.22, which, according to Ingenix, was the amount United had paid Encompass for claims through June 1, 2009. Ingenix's stated reason for the refund request was that Encompass had misrepresented that it was an ASC on its reimbursement bills to United.

According to United, when a patient has a procedure performed at an ASC or hospital, or any facility other than the physician's office, United receives two bills, one from the physician for the professional component of the procedure, and the other from the facility for the technical component or facility fee. However, when a procedure is performed in the physician's own office, only the physician is eligible to bill United. This is because the physician's charges for in-office procedures are considered "global," which means they include both the professional and technical components. United argues that Encompass's claims constitute double billing of services because, in addition to reimbursing Encompass, United has already paid the physicians for the global procedure.

According to Encompass, it is not an ASC and has never represented itself as such. Rather, Encompass claims that in setting up an account with United, it emphasized that its services are provided in a physician's office. In particular, Encompass claims that in May of 2007, Encompass's billing company, Oklahoma Medical Billing, spoke with a United provider rela-

tions representative over the phone and that in this call, the parties discussed that Encompass's services were performed in physicians' offices and that Encompass was not an ASC. Encompass further alleges that in this call, the United representative directed Encompass to bill United on a UB form with an SU modifier with the physician's name on the form to show the location of the service, which has been Encompass's practice ever since. This specific direction as to how Encompass was to bill United is significant because United claims that Encompass misrepresented itself as an ASC by the way it filled out reimbursement forms.

In August of 2009, Encompass responded to the July letter from Ingenix by sending a letter to Ingenix that described Encompass's efforts to properly bill for its services and stated that it had never represented itself as an ASC. In January of 2010, Ingenix again sent Encompass a letter claiming that it had misrepresented itself as an ASC and that United was entitled to reimbursement of all funds paid to Encompass based on the misrepresentation.

Apparently at an impasse, Encompass filed its initial complaint on March 5, 2010 (Dkt. 1). After filing an amended complaint on March 9, 2010 (Dkt. 3), Encompass filed its "Second Amended Complaint" (SAC) on July 1, 2010 (Dkt. 30). The SAC requests a declaratory judgment that Encompass is not required to reimburse United any amounts that it has paid Encompass, and that United is required to reimburse Encompass on its outstanding unpaid claims. The SAC also alleges numerous claims for relief under Texas common and statutory law and federal law. The claims are based generally on allegations that United led Encompass to believe that its services would be covered, that United has wrongfully denied coverage under the relevant benefit plans, and that the

method Defendants used to calculate reimbursement rates has resulted in substantial underpayments. On August 24, 2010, the Defendants collectively filed the instant motion to dismiss Encompass's SAC (Dkt. 41).

## II. ANALYSIS

### A. Standing

 The Defendants first argue that Encompass has not alleged enough facts to establish that it has standing to bring this suit. Specifically, the Defendants argue that the assignments Encompass received from its patients only give Encompass the right to receive payment for medical services but not the right to sue on behalf of the patients. The court notes at the outset that the Defendants' standing argument is necessarily limited to whether Encompass has standing to make claims on behalf of patients, which, according to Encompass, include claims alleging breach of contract, violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act (DTPA), and violations of ERISA. Encompass need not rely on the assignments to establish standing for claims filed on its own behalf, claims alleging fraud or negligent misrepresentation, defamation and business disparagement, violations of the Texas Insurance Code and the DTPA, promissory estoppel, and quantum meruit.

The relevant language in the standard assignment of benefits form that Encompass obtained from its patients reads as follows:

> For the medical benefits allowable and otherwise payable to me under my current insurance policy as payment toward the total charges for the services rendered. This is a direct assignment of my rights and benefits under this policy.

Dkt. 30–1.

Below the paragraph that contains the above language, the assignment also states:

I authorize Encompass Office Solutions, Inc. to initiate a complaint to the insurance Commissioner for any reason on my behalf.

*Id.*

■ It is well established in the Fifth Circuit that a healthcare provider may obtain derivative standing to enforce a beneficiary's claims by virtue of a valid assignment. *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan,* 426 F.3d 330, 333–34 (5th Cir. 2005).¹ The Defendants argue that Encompass's assignments do not confer derivative standing because they do not expressly give Encompass the right to bring a lawsuit. They also argue that because the assignments grant Encompass the right "to initiate a complaint to the insurance Commissioner," the principle of contract interpretation known as *expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another, bars Encompass from filing lawsuits on behalf of its patients.

The Defendants cite three United States district court cases and one Florida state court in support of its argument that the assignment must "expressly transfer[ ] the specific right to bring the various causes of action alleged in the [complaint]:" *Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Grp. Med. Plan,* 459 F.Supp.2d 617, 624 (S.D.Ohio 2005); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan,* No. 05–5941, 2007 WL 2793372, at *3 (D.N.J. Sept. 25, 2007); *Touro Infirmary v. Am. Maritime Officer,* No. 07–1441, 2007 WL 4181506, at *5–6 (E.D.La. Nov. 21, 2007); and *Health Care Ctr. Tampa, Inc. v. Allstate Ins. Co.,* No. 03–5567, 2004 WL 1301917, at *1 (Fla.Cir. Ct. Jan. 30, 2004). The court finds these cases unpersuasive and respectfully declines to follow them.²

■ Instead, the court chooses to follow a recent decision by the United States Court of Appeals for the Eleventh Circuit in which the court held that derivative standing does not require express authori-

---

1. The Fifth Circuit has articulated policy reasons in favor of granting derivative standing to healthcare providers who have been assigned the right to receive benefits under patients' health plans. *See Tango Transport v. Healthcare Fin. Servs. LLC,* 322 F.3d 888, 894 (5th Cir.2003) ("[D]enying derivative standing to health care providers would harm participants or beneficiaries because it would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.' Likewise, granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front."). *See also Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1289 n. 12 (5th Cir.1988).

2. Contrary to the Defendants' assertion, the opinion in *Barix* did not suggest that derivative standing required anything more than a mere assignment of benefits. Rather, the court more narrowly held that while an assignee could sue to collect benefits, it could

not sue for violating a federal statute requiring insurers to furnish plan documents upon request by a beneficiary. *Id.* at 623–24. And while the court in *Cooper Hosp.* did suggest that an assignee of health benefits needed express authorization to file suit, the court finds that decision unpersuasive because at the time it was decided, the Third Circuit, unlike the Fifth Circuit, had not definitely recognized the concept of derivative standing. *See North Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.,* No. 07–4812(HAA), 2008 WL 4371754 (D.N.J. Sept. 18, 2008). The court's unwillingness to follow *Cooper Hosp.* also cautions it from *Touro Infirmary,* a case in which the court relied on *Cooper Hosp.* to hold that an assignee of health benefits needed express authorization to file suit. However, unlike the Third Circuit, derivative standing is firmly established in the Fifth Circuit and was so at the time *Touro* was decided. Finally, *Health Care Ctr. Tampa* is unpersuasive because the court did not take into account the concept of derivative standing, which, as mentioned before, is firmly established in the Fifth Circuit.

zation to sue and that an "assignment of the right to payment is enough to create standing." *Conn. State Dental v. Anthem Health Plans*, 591 F.3d 1337, 1352 (11th Cir.2009). This is because " '[a]n assignment to receive payment of benefits necessarily incorporates the right to seek payment. [T]he right to receive benefits would be hollow without such enforcement capabilities.' " *Id.* at 1353 (quoting *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 7 F.Supp.2d 79, 84 (D.Mass.1998)). *Conn. State Dental's* holding has been cited with approval by a district court within the Fifth Circuit. *See Spring E.R. LLC v. Aetna Life Insurance Co.*, No. H–09–2001, 2010 WL 598748, at *2–4 (S.D.Tex. Feb. 17, 2010). Indeed, in *Spring E.R.*, the district court held that the healthcare provider had standing despite uncertainty about whether it had in fact received an assignment of benefits. *Id.* at *4. The court reasoned that the mere possibility of the provider receiving direct payment of benefits was enough to establish standing. *Id. See also In re Managed Care Litigation*, No. 00–1334–MD, 2009 WL 742678, at *5 (S.D.Fla. March 20, 2009) ("An assignment of benefits under a plan includes the assignment of the right to sue for such benefits, for without the latter, the former would be unenforceable.").

The court agrees with the Eleventh Circuit and finds that its reasoning is consistent with the Fifth Circuit's policy in favor of granting derivative standing. The court also finds that the Defendants' *expressio unius* argument does not overcome the compelling argument for holding that an assignment of policy benefits necessarily includes the right to seek payment of those benefits. Consequently, the court finds that by virtue of the assignments, Encompass has made a sufficient showing of standing to survive the Defendants' motion to dismiss. The Defendants' motion to dismiss on standing grounds is, therefore, **DENIED.**

## B. ERISA Preemption

The Defendants argue that most of Encompass's state law claims are preempted by ERISA and, therefore, must be dismissed. Specifically, they argue that Encompass's state law claims that relate to insurance plans governed by ERISA are subject to complete preemption by the ERISA civil enforcement statute. The claims affected by this argument are Encompass's state law claims for breach of contract, fraud or negligent misrepresentation, defamation, business disparagement, promissory estoppel, violations of the Texas Insurance Code and the DTPA, promissory estoppel, and quantum meruit.

The ERISA civil enforcement provision, § 502(a) of the statute, provides that a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B). State law claims that duplicate or fall within the scope of the statutory remedy are completely preempted by ERISA. *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir.2009). Complete preemption results in dismissal of the state-law claim, but courts typically allow plaintiffs to replead and assert the dismissed state law claims as federal claims under § 502(a). *See, e.g., Meyers v. Texas Health Resources*, No. 3:09–CV–1402–D, 2009 WL 3756323, at *8 (N.D.Tex. Nov. 09, 2009). This is because complete preemption is premised on the recognition "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *See also Giles v. NYLCare Health Plans, Inc.*, 172

F.3d 332, 337 (5th Cir.1999) (complete preemption results in "transmogrifying a state cause of action into a federal one."). Given the ability of complete preemption to automatically transform state law claims into federal claims, the Supreme Court is "reluctant to find [this] extraordinary preemptive power." *Metro. Life*, 481 U.S. at 65, 107 S.Ct. 1542.[3]

Encompass responds to the Defendants' complete preemption argument by first arguing that its state law claims relating to plans not governed by ERISA cannot be preempted by ERISA. The Defendants do not dispute that these claims cannot be preempted by ERISA, and the court agrees that they cannot. Accordingly, as to any claim that relates to plans not governed by ERISA, the Defendants' motion to dismiss based on ERISA preemption is **DENIED.**

With regards to its state law claims that do relate to plans governed by ERISA, Encompass concedes that some of them are preempted by ERISA, namely, its request for declaratory judgment, claims for breach of contract, quantum meruit, violations of the DTPA, and violations of the Texas Insurance Code not based on negligent misrepresentation or fraud.[4] Accordingly, as to these claims, the Defendants' motion to dismiss is **GRANTED.** And, as previously discussed, because state law claims that are completely preempted by § 502(a) are necessarily federal in character, Encompass is granted leave to amend its complaint to recast the preempted claims as federal claims under § 502(a).

■ As to its remaining state law claims for negligent misrepresentation under both the common law and the Texas Insurance Code, fraud, promissory estoppel, defamation and business disparagement, Encompass argues that they are not preempted because they are brought independently from the rights granted by ERISA to plan beneficiaries. In other words, Encompass argues that these claims are not preempt-

---

**3.** Complete preemption under § 502(a) is only one form of preemption under ERISA. The other form is conflict preemption under § 514. Section 514 provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan...." 29 U.S.C. § 1144(a). Conflict preemption under § 514 is an affirmative defense and therefore the Defendants would have the burden to plead and prove it. *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir.2006). Conflict preemption is broader than complete preemption and as a result preempts more state law claims. *Conn. State Dental v. Anthem Health Plans*, 591 F.3d 1337, 1344 (11th Cir.2009). In their motion to dismiss, and in their reply to Encompass's response, the Defendants did not argue conflict preemption or even mention § 514. Rather, the Defendants repeatedly allege that Encompass's state law claims are "completely preempted" by ERISA, citing § 502. While several of the cases cited by both parties address conflict preemption, and both parties make arguments that relate to the conflict preemption framework, the court nevertheless concludes that the Defendants have not raised conflict preemption as an affirmative defense. To find otherwise would unfairly prejudice Encompass. And while courts can raise the question of subject matter jurisdiction *sua sponte*, conflict preemption is merely an affirmative defense and does not operate to confer subject matter jurisdiction. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 275 n. 34 (5th Cir.2004). Consequently, the court addresses only whether Encompass's claims are subject to complete preemption under § 502(a).

**4.** The court's finding that Encompass conceded the preemption of these claims is based on the following: (1) in its response to the Defendants' motion dismiss (Dkt. 51), Encompass did not refute the Defendants' arguments that these claims were preempted; (2) in their reply to Encompass's response (Dkt. 55), the Defendants' asserted that Encompass had conceded that these claims were preempted, *see* pg. 27; and (3) in its sur-reply (Dkt. 58), Encompass did not refute the Defendants' assertion that it had conceded the preemption of these claims.

ed because they are brought on its own behalf and not on behalf of plan beneficiaries.[5] The Defendants dispute this, arguing that because "the gravamen of Encompass's complaint is that United improperly failed to pay Encompass's claims that were submitted under ERISA plans," Encompass's claims are dependent on the rights of plan beneficiaries and therefore preempted.

■ In *Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), the U.S. Supreme Court established a two-part test for determining when state law claims are completely preempted by § 502(a). Under *Davila,* state law claims are completely preempted when (1) an individual, at some point in time, could have brought the claim under § 502(a), and (2) there is no other legal duty independent of ERISA or the plan terms that are implicated by the defendant's actions. *Id.* at 210, 124 S.Ct. 2488. For the reasons set forth below, the court finds that Encompass's state law claims fail both prongs of *Davila* and are therefore not subject to complete preemption.

Under the first prong of the *Davila* test, Encompass could not have brought the state law claims under § 502(a) because they do not have standing to bring them under that section. The negligent misrepresentation, fraud and promissory estoppel claims relate to the alleged representation by United to Encompass that Encompass's services would be covered under United health plans. The defamation and business disparagement claims relate to alleged statements by United about Encompass to plan beneficiaries and an alleged statement by Ingenix about Encompass in a press release. Unlike Encompass's claims for breach of contract, violations of the Texas Insurance Code and the DPTA not based on negligent misrepresentation or fraud, and violations of ERISA, claims that Encompass brings on behalf of patients by virtue of the assignments, these other claims are brought independently of the assignments and on Encompass's own behalf. Therefore, because the only way in which Encompass could bring claims under § 502(a) is by virtue of the assignments, and for these claims Encompass does not rely on the assignments, the court finds that the claims fail prong one of *Davila.* *See Marin General Hosp. v. Modesto & Empire Traction,* 581 F.3d 941, 947–49 (9th Cir.2009) (hospital's state law claims for negligent misrepresentation and estoppel failed prong one of *Davila* because basis for claims was telephone conversation with defendant plan administrator rather than assignments from patients); *Franciscan Skemp v. Central States Joint Bd.,* 538 F.3d 594, 597–98 (7th Cir.2008) (same).

Because complete preemption requires that both *Davila* prongs be met, and the court has found that prong one has not been met, the court is not obligated to analyze the claims under prong two. The court will nevertheless note that several other district courts have found that state law claims similar to Encompass's fail prong two of *Davila* because they were based on legal duties independent of those imposed by ERISA and the plan terms. *In Omega Hospital, LLC v. Aetna Life Ins. Co.,* No. 08–3717, 2008 WL 4724294 (E.D.La. Oct. 22, 2008), the hospital plaintiff alleged that before providing medical services, it verified with the patient's in-

---

**5.** That Encompass has brought certain claims in reliance on assignments does not prevent it from bringing other claims that do not rely on assignments. "[A] provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment holds two separate claims. In such a case, the provider may assert a claim for benefits under ERISA, the state law claim, or both." *Conn. State Dental v. Anthem Health Plans,* 591 F.3d 1337, 1352 (11th Cir. 2009).

surer not only that the patient had health insurance but also that the specific care to be rendered would be covered. The insurer later refused to pay the claim and the hospital sued. The court held that the hospital's state law claims for detrimental reliance were not completely preempted by § 502(a) because "[r]egardless of whether the ERISA plan would have covered the procedures ... there is a state law question as to the hospital's negligent misrepresentation." *Id.* at *6–7. Similarly, in *Texas Health Res. v. Grp. & Pension Adm'rs, Inc.*, No. 4:09–CV–547–A, 2009 WL 4667117 (N.D.Tex. Dec. 8, 2009), the plaintiff hospital brought a state law defamation claim against a plan administrator based on a letter the plan administrator sent to patients informing them that the hospital had overcharged them and that the plan would not cover overcharged amounts. The court held that the hospital's defamation claim was not completely preempted by ERISA because it arose from the letter sent by the plan administrator and not from the terms of the plan. *Id.* at *3–4. *See also Ctr. for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana*, No. 06–9985, 2007 WL 1428717 (E.D.La. May 10, 2007); *St. Luke's Episcopal Hosp. v. Acordia Nat'l*, No. H–05–1438, 2006 WL 3093132 (S.D.Tex. June 8, 2006).[6]

Therefore, because the court finds that Encompass's state law claims for negligent misrepresentation under both the common law and the Texas Insurance Code, fraud, promissory estoppel, defamation and business disparagement are not completely preempted by ERISA, the Defendants' motion to dismiss those claims on preemption grounds is **DENIED.**

## C. Motion to Dismiss under Rule 12(b)(6)

The Defendants have moved to dismiss each of Encompass's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Although the court has already held that many of the following claims are preempted by ERISA, the court must nevertheless analyze each of the SAC's claims under Rule 12(b)(6) because, as discussed above, the court's preemption holding does not apply to claims that relate to health plans not governed by ERISA. The court will begin its analysis by delineating the legal standard used to judge motions to dismiss under Rule 12(b)(6).

### 1. Legal Standard

In passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's alle-

---

**6.** The court's holding that these state law claims are not completely preempted also finds support from a pre-*Davila* Fifth Circuit decision that pertained to conflict preemption under § 514 rather than complete preemption under § 502(a). In *Transitional Hosps. Corp. v. Blue Cross*, 164 F.3d 952, 955 (5th Cir. 1999), the hospital plaintiff alleged that before it treated the patient, the defendant insurer misrepresented that it would reimburse the hospital for 100% of the patient's hospital bills after the patient had exhausted his Medicare benefits. When the hospital sought full payment for the patient's bills after the Medicare benefits were exhausted, the insurer refused, claiming that the hospital was a nonparticipating hospital under patient's ERISA plan. The Fifth Circuit held that while the hospitals's breach of contract claim seeking payment of benefits under the terms of plan were preempted, the hospital's state law claims alleging common law misrepresentation and statutory misrepresentation were not preempted because the claims were "not dependent on or derived from the patient's right to recover benefits" under the ERISA plan. That the state law claims in *Transitional* survived conflict preemption under § 514, the form of ERISA preemption that is broader and takes in more claims than complete preemption, further suggests that the state claims in the instant case are not subject to complete preemption.

gations as true. *Ballard v. Wall,* 413 F.3d 510, 514 (5th Cir.2005). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n. 8, 127 S.Ct. 1955. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id.* at 555, 127 S.Ct. 1955, and into the "realm of plausible liability." *Id.* at 557 n. 5, 127 S.Ct. 1955. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## 2. Breach of Contract

 The Defendants argue that Encompass has failed to state a claim for breach of contract. In order to prove its breach of contract claim, Encompass must plead facts showing: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton,* No. 05–07–01731–CV, 2010 WL 936688, at *3 (Tex. App–Dallas Mar. 17, 2010, pet.

filed). In particular, the Defendants argue that the breach of contract claim must be dismissed because Encompass has failed to identify specific contract provisions that United allegedly breached. The court disagrees and finds that Encompass has identified plan provisions in such a manner that is sufficient to survive the pleading stage. With regards to its breach of contract claim, Encompass has pled the following:

> United's plans permit coverage for outpatient surgeries done in physicians' offices. The plans provide coverage for both in and out-of-network "[s]urgery and related services received on an outpatient basis at a Hospital or Alternate Facility or in a Physician's office.... Benefits under this section include: The facility charge and the charge for supplies and equipment. Physician services for anesthesiologists, pathologists and radiologists." (SAC ¶ 37);
>
> Encompass patients have PPO or POS plans that allow them to seek medically necessary benefits, whether in-network or not. Encompass is an out-of-network provider for United, which assists in performing outpatient surgeries in physician's offices by providing supplies, equipment, and nurses—covered services. As such, United's insureds (Encompass's patients) are contractually entitled to reimbursement on their claims. [ ] For some time Defendants paid these claims. Then Defendants started denying many of Encompass's claims. The claims, however, should not have been denied as United's plans provide coverage for the very services Encompass performs. United breached its ERISA-governed plan language and non-ERISA contracts by failing to reimburse Encompass for covered procedures. (SAC ¶ 38);
>
> Additionally, United contractually promises its patients that it will pay a per-

centage of the reasonable and customary charge (also known as the "RAC" rate, or the usual, customary and reasonable rate ("UCR rate") after deductible for out-of-network outpatient surgery and anesthesia, for physician's office services, and for supplies and equipment used for office-based surgeries—the very supplies, equipment, and support Encompass provides. [ ] But as set forth below, United's representations were untrue. United breached its ERISA-governed plan language and policies and non-ERISA contracts by using flawed or inadequate data to determine UCR amounts, which resulted in reimbursements well below actual UCR for such out-of-network medical services. (SAC ¶¶ 39–40).

The court finds that Encompass's allegations contain enough facts about plan provisions to make its breach of contract claim plausible and to put United on notice as to which provisions it allegedly breached. Accordingly, the Defendants' motion to dismiss Encompass's breach of contract claim for failure to state a claim is **DENIED**.[7]

### 3. Fraud

 The Defendants argue that Encompass has failed to plead enough facts to state a claim for fraud. Encompass's fraud claim is based on allegations that United led Encompass to believe that its services would be covered. Under Texas law, a claimant alleging fraud must prove

the following: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex.2009) (per curiam).

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for fraud claims and requires that a party "state with particularity the circumstances constituting fraud." The Fifth Circuit has interpreted Rule 9(b) to "require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir.2010) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003)). But "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067–68 (5th Cir.1994).

**7.** In support of its argument that Encompass's breach of contract claim fails to state a claim the Defendants rely heavily on *Midwest Special Surgery. P.C. v. Anthem Ins. Cos.*, No. 4:09CV646 TIA, 2010 WL 716105, at *2–3 (E.D.Mo. Feb. 24, 2010). In *Midwest Special*, the district court dismissed a healthcare provider's breach of an insurance contract claim for failure to identify the specific provisions in the plan that were allegedly breached. The court finds the *Midwest Special* decision inap-

posite to the instant case because in that case the plaintiffs merely alleged that "they seek recovery of sums due and owing 'as reimbursement for medical services provided to Defendants plan participants under numerous health plans which qualify as employee welfare benefit plans as defined by ERISA.'" *Id.* at *2. Needless to say, Encompass has alleged substantially more than the plaintiff in *Midwest Special.*

 The court finds that Encompass has not adequately pled its cause of action for fraud. Specifically, the court finds that Encompass's fraud claim is deficient in failing to adequately plead the knowledge element of fraud. While Rule 9(b) provides that intent and knowledge "may be alleged generally," this is not a license to base claims of fraud upon conclusory allegations. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154–55 (5th Cir.2010). Proving the knowledge element of fraud "requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman*, 14 F.3d at 1068. The requirements for such specific facts can be satisfied by (1) alleging facts that show a defendant's motive to commit fraud, or (2) identifying circumstances that indicate conscious behavior on the part of the defendant, with the strength of such circumstantial allegations being correspondingly greater. *Id.* The only statement in the SAC alleging knowledge is that "Defendants either knew these representations were false or made the representations recklessly, as a positive assertion, without knowledge of their truth of falsity." ¶ 101. Not only is this insufficient under Rule 9(b), it also fails under the ordinary pleading standard provided by Rule 8(a). *See Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Defendants' motion to dismiss Encompass's fraud claim is **GRANTED.** The claim is dismissed without prejudice, and Encompass is given leave to amend it to the extent necessary to remedy deficiencies identified herein.

### 4. Negligent Misrepresentation

 The Defendants argue that Encompass has failed to plead enough facts to state a claim for negligent misrepresentation. Like its fraud claim, Encompass's negligent misrepresentation claim is based on allegations that United led Encompass to believe that its services would be covered. Under Texas law, a claimant alleging negligent misrepresentation must prove the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733–35, No. 3:10–CV–1182–D, 2011 WL 588059, at *7–8 (N.D.Tex. Feb. 10, 2011).

The SAC includes a subsection under the "Claims for Relief" section entitled "Fraud or Negligent Misrepresentation." *See* Dkt. 30, pg. 39. The list of allegations under that subsection appear to apply to both the fraud claim and the negligent misrepresentation claim. The Defendants argue that because Encompass's claims for fraud and negligent misrepresentation are intermingled, the heightened pleading requirements of Rule 9(b) should also apply to Encompass's negligent misrepresentation claim and that the claim is insufficient under that standard.

 It is true that while Rule 9(b) by its terms applies only to "averments of fraud or mistake," the Fifth Circuit has recognized that Rule 9(b) can apply to a claim for negligent misrepresentation when the fraud and negligent misrepresentation claims are sufficiently intertwined.

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 n. 3 (5th Cir.2010). Thus, if the complaint bears no distinct focus on allegations of negligent misrepresentation separate from allegations of fraud then both claims are subject to the heightened pleading requirements of Rule 9(b). *Biliouris v. Sundance Res., Inc.,* 559 F.Supp.2d 733, 737 (N.D.Tex. 2008); *Kitchell v. Aspen Exploration, Inc.,* 562 F.Supp.2d 843, 852–53 (E.D.Tex.2007); *In re Enron Corp. Securities, Derivative,* 540 F.Supp.2d 800, 807 & 827 (S.D.Tex. 2007). In other words, Rule 9(b) governs both claims unless the court can devise a simple redaction that removes allegations of fraud from the complaint but leaves a valid and intelligible negligent misrepresentation claim intact. *Id.* (all three cases).

The court concludes that Rule 9(b) provides the appropriate pleading standard for Encompass's negligent misrepresentation claim. The SAC combines allegations of fraud and negligent misrepresentation without specifying which allegations are for the fraud claim and which are for the negligent misrepresentation claim. Therefore, it is not possible for the court to strip away from the complaint allegations of fraud without also stripping away allegations that may have been intended for the negligent misrepresentation claim. Accordingly, the court will judge the sufficiency of Encompass's negligent misrepresentation claim under the heightened pleading requirements of Rule 9(b).

The SAC alleges that United made negligent misrepresentations in four different ways. First, Encompass alleges that in May of 2007, Oklahoma Medical Billing (OMB), Encompass's billing company, spoke over the phone to a United provider relations representative about Encompass establishing an out-of-network account with United. Encompass alleges that in this phone call OMB explained Encompass's services, and that the United provider relations representative gave OMB specific information about how Encompass should seek reimbursement from United. ¶¶ 72, 99. Second, Encompass alleges that United made several statements to it and to its patients representing that Encompass's services would be covered. ¶¶ 78, 100. Third, Encompass alleges that United represented to it and to its patients that United would "timely and properly reimburse for out-of-network outpatient surgical care performed in a physician's office." ¶ 102. And, finally, Encompass alleges that United falsely represented "in the course of Defendants' business ... the appropriate way for Encompass to bill, regarding coverage of the procedure, or regarding timely and proper reimbursement." ¶ 103.

 The court finds that Encompass's first group of allegations, those relating to the May 2007 phone call, fails to meet the heightened pleading standard of Rule 9(b). While the claim does set forth the "who, what, when, and where" of the representations, as required under 9(b), it fails to allege how the statements constitute negligent misrepresentation, or, specifically, how the statements were false. The only language in the SAC suggesting that United's billing instructions were false is that "Defendants stopped abiding by their representation that they would reimburse Encompass as long as it billed on the UB form with the SU modifier," ¶ 99, and "Defendants promised to reimburse Encompass if it submitted requests for reimbursement on the UB form with the SU modifier," ¶ 134. Yet Encompass never provides the "who, what, when, and where" of these alleged representations, i.e. whether United made them in the May 2007 conversation or in some other conversation. Consequently, Encompass's negligent misrepresentation claim based on the

May 2007 phone call is insufficient under Rule 9(b).

■ The court also finds that Encompass's second group of allegations, those relating to United's assurance of coverage, fails to meet the heightened pleading standards of Rule 9(b). While the complaint does allege in several places that United represented to Encompass and its patients that Encompass's services would be covered by United policies, see ¶¶ 78, 100, 102, and 103, the complaint fails to allege when these representations were made, who made them, and to whom, specifically, they were made.[8] Therefore, Encompass's negligent misrepresentation claim based on these representations is insufficient under Rule 9(b).

Likewise, the court finds that the fourth group of allegations, those relating to United's representations in the course of business, is insufficient to state a claim for negligent misrepresentation because they too fail to identify when these representations were made, who made them, and to whom, specifically, they were made.

■ Alternatively, the court finds that the third group of allegations on which Encompass bases its negligent misrepresentation claim, those relating to United's promises to timely and properly reimburse patients, is sufficient to plead a claim for negligent misrepresentation under Rule 9(b). The SAC alleges that United's policies expressly provide coverage for the kind of services that Encompass provides. See ¶ 36–40. With these allegations, the "who, what, when, and how" is clear, and notice of the claim is sufficient to enable United in developing a response.

Accordingly, because the court finds that part of the allegations on which Encompass bases it claim for negligent misrepresentation does satisfy the heightened pleading requirements of Rule 9(b), the Defendants' motion to dismiss the claim is **DENIED.** Encompass is granted leave to amend its allegations in support of its negligent misrepresentation claim to the extent necessary to remedy the deficiencies identified herein.

## 5. Defamation

■ The Defendants argue that Encompass has failed to plead enough facts to state a claim for defamation. Encompass's defamation and business disparagement claims relate to the following statements allegedly made by the Defendants. First, "in correspondence from Defendants to Encompass's patients, Defendants often claimed that they could not pay the claim because they were 'unable to verify state licensure of a facility or criteria to support the provider billing type. Proof of facility licensure or hospital affiliation is required.'" ¶ 107. Encompass argues that this statement is defamatory because it implies that Encompass was required to be licensed and was not licensed, when in reality it is not required to be licensed. Second, "in a press release, a representative for Ingenix stated that 'Encompass submitted bills as an ambulatory surgery center [but] Encompass is not an ambulatory surgery center and does not perform medical procedures.'" ¶ 111. Encompass argues that this statement is false because it "does perform medical procedures, albeit under the supervision of physicians." En-

8. Encompass argues in its brief in response to the Defendants' motion to dismiss (Dkt. 51) that this information can be gathered from Exhibit 3 to the SAC, a spreadsheet containing data about claims made to United for services provided by Encompass. However, contrary to Encompass's assertion, Exhibit 3 does not reveal which of these claims relate to patients who were told by United that Encompass's services would be covered and when that representation occurred. Therefore, Exhibit 3 does not lift this set of allegations over the Rule 9(b) hurdle.

compass also argues that the Ingenix statement suggests that Encompass was falsely seeking reimbursement as an ASC when in reality Encompass has never represented itself as such.

■ The elements of defamation under Texas law are that: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Udoewa v. Plus4 Credit Union*, 754 F.Supp.2d 850, 866–67 (S.D.Tex.2010) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). A defamatory statement is one in which the words tend to damage a person's reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury. *Id.* While a claim for defamation is not subject to the heightened pleading requirements of Rule 9(b), the pleadings 'for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond. *See Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. A. 398–CV–1079, 1998 WL 386158, *5 (N.D.Tex. 1998), *aff'd*, 232 F.3d 210 (5th Cir.2000); *Redden v. Smith & Nephew, Inc.*, No. 3:09–CV–1380–L, 2010 WL 2944598, at *5 (N.D.Tex. July 26, 2010).

The court finds that Encompass has pled its defamation claim with sufficient particularity. While the allegations relating to the defamation claim do not specify when these alleged statements were made or, with regards to the letters to patients, to whom they were specifically made, the court finds that they are nevertheless sufficient to put United on notice of the claim. The SAC quotes the statements that Encompass alleges are defamatory, and the statements are described in such a manner that will enable the Defendants to easily investigate the alleged statements through discovery. Additionally, that the Defendants have already mounted a defense to these statements being defamatory, a truth defense, further suggests that the SAC provides the Defendants with sufficient notice.

Regarding their truth defense, the Defendants argue that Encompass's defamation claim must fail because the content of the statements that Encompass alleges are defamatory is true. The Defendants argue that Encompass's own assertions in the SAC demonstrate the truthfulness of Defendants' statements: "in its SAC, Encompass admits that it: (1) 'is not an ASC' (SAC ¶ 13); (2) 'is not and has never been an ASC' (SAC ¶ 70); (3) 'is not a facility or and [sic] ASC' (SAC ¶ 70); (4) 'is not licensed as a facility' (SAC ¶ 107); and (5) 'provides a safe, surgical environment that allows *physicians* to perform surgical procedures in their own offices' (SAC ¶ 10 (emphasis added)). Thus, because the allegation [sic] conclusively establish that Encompass is *not* an ASC and that *physicians* perform these procedures, Encompass's claims must be dismissed."

Encompass counters by arguing that its defamation claim rests not on the literal veracity of the Defendants' statements but on the false impressions that they convey, namely that Encompass should have been licensed as a facility when in reality it did not have to be, and that Encompass falsely submitted requests for reimbursement as an ASC when in reality it never represented itself as an ASC.[9] Moreover, Encompass argues that "whether the statements are true or false should be determined on a motion for summary judgement, not a motion to dismiss."

---

9. The SAC does contest, however, the literal veracity of the statement in the Ingenix press release that Encompass "does not perform medical procedures." *See* ¶¶ 111, 112. Thus, it cannot be said that the SAC admits the truth of this statement.

Truth is an affirmative defense to a defamation claim when the plaintiff is a private person or entity. *See Hearst Corp. v. Skeen,* 159 S.W.3d 633, 637 n. 1 (Tex.2005). In order for dismissal to be appropriate on the basis of an affirmative defense, the defense must be established on the face of the complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, N.A.,* 467 F.3d 466, 470 (5th Cir.2006). *See also Marquis v. Omni-Guide, Inc.,* No. 3:09–CV–2092–D, 2011 WL 321112, at *4 (N.D.Tex. Jan. 28, 2011) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by admitting all the ingredients of an impenetrable defense." (internal quotation and citation omitted)). The court agrees with Encompass that the Defendants' truth defense is not an appropriate basis for dismissal at this stage in the case. Encompass's defamation claim is based on the alleged false message conveyed by the statements, not on the literal truth of the Defendants' individual statements. Texas courts recognize this as a legitimate theory for a defamation cause of action. *See Turner v. KTRK Television,* 38 S.W.3d 103, 114 (Tex.2000) ("under Texas law a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory."). Thus, even if the court were to conclude on the basis of the SAC alone that the alleged defamatory statements are literally true, the court cannot conclude at this stage that Encompass has stated an implausible claim on which it cannot possibly recover. Accordingly, the Defendants' motion to dismiss Encompass's defamation claim is **DENIED.**

### 6. Business Disparagement

The Defendants argue that Encompass has failed to plead enough facts to state a claim for business disparagement. Encompass's business disparagement claim relates to the same alleged statements that form the basis of its defamation claim. *See supra.* "To prevail on a business disparagement claim, the plaintiff must prove: (1) publication by the defendant of false and disparaging words about the plaintiff; (2) malice; (3) lack of privilege; and (4) special damages to the plaintiff." *Fluor Enters., Inc. v. Conex Int. Corp.,* 273 S.W.3d 426, 433 (Tex.App.-Beaumont 2008, pet. denied). The Defendants argue that Encompass has failed to plead special damages. To prove special damages, a plaintiff must provide evidence "that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings." *Astoria Indus. of Iowa, Inc. v. SNF, Inc.,* 223 S.W.3d 616, 628 (Tex.App.-Fort Worth 2007, pet. denied).

The only allegation in the SAC relating to special damages is that "[t]he publication of these statements has caused Encompass to suffer lost profits and lost goodwill/business reputation." The court finds that this conclusory statement, void of any supporting facts, is insufficient to support a claim for business disparagement. *See Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Consequently, the court **GRANTS** the Defendants' motion to dismiss Encompass's claim for business disparagement. The claim is dismissed without prejudice, and Encompass is given leave to amend it to the extent necessary to remedy deficiencies identified herein.

### 7. DTPA and Texas Insurance Code

#### a. Pre–Suit Notice

■ The Defendants argue that Encompass did not comply with the pre-suit notice requirements under the DTPA and the Texas Insurance Code. It is unclear whether, based on this argument, the Defendants seek dismissal of the claims brought under these statutes or abatement of the claims. However, because abatement, not dismissal, is the proper remedy for failure to satisfy the notice requirements, the court will treat the Defendants' request as one for abatement. *See Hines v. Hash,* 843 S.W.2d 464, 468–69 (Tex. 1992).

Both the DTPA and the Texas Insurance Code require a plaintiff to give sixty days' notice to a defendant before filing suit. *See* Tex. Ins.Code § 541.154(a); Tex. Bus. & Com.Code § 17.505(a). If a person against whom an action under these statutes is brought does not receive the required pre-filing notice, he or she may file a plea in abatement no later than thirty days after the date he or she files an original answer in the court in which the action is pending. Tex. Ins.Code § 541.155(a); Tex. Bus. & Com.Code § 17.505(c). A court must abate the action if it finds that the claimant did not provide the required pre-filing notice. Tex. Ins. Code § 541.155(b); Tex. Bus. & Com.Code § 17.505(d). The abatement will run until the sixtieth day after the date the claimant properly provides the pre-filing notice. Tex. Ins.Code § 541.155(d); Tex. Bus. & Com.Code § 17.505(e).

■ Encompass concedes that it did not give pre-suit notice of the claims but asserts in its response to the Defendants' motion to dismiss (Dkt. 51), filed on October 18, 2010, that it has since provided the required pre-suit notice. And in its reply brief (Dkt. 55), the Defendants do not dispute that Encompass provided notice subsequent to filing suit.

The court finds that Encompass failed to provide pre-notice suit of its DTPA and Texas Insurance Code claims, as required by Texas law, and that the Defendants filed a plea in abatement within the required time frame. However, because the court finds that it has been over sixty days since Encompass represented to the court that it had filed its belated pre-filing notice, the court finds that there is no reason to formally abate this action for another sixty days. Accordingly, the Defendants' motion to dismiss/abate these claims for failure to provide pre-suit notice is **DENIED.**

#### b. DTPA Standing

The Defendants argue that Encompass's DTPA claim should be dismissed because Encompass lacks standing to bring such a claim. The DTPA prohibits entities engaged in commerce from engaging in "false, misleading, or deceptive acts or practices." Tex. Bus. & Com.Code § 17.46(a). To meet the DTPA's standing requirement, a complaining party must plead and prove that it is a "consumer." Tex. Bus. & Com.Code § 17.50(a). The Defendants argue that Encompass cannot bring a DTPA claim on its own behalf because it has not established that it is a "consumer" under the Act and that it cannot qualify as such. Further, they argue that Encompass can not bring a DTPA claim on behalf of its patients because DTPA claims cannot be assigned. Encompass counters by emphasizing that it brings its DTPA claim on its own behalf and not on behalf of patients, and that it has sufficiently pled its "consumer" status. Encompass also argues that even if it is not a "consumer" under the Act, it can bring DTPA claims by virtue of the assignments.

■ The Defendants first argue that the SAC's lone allegation that "Encompass

is a consumer ... under the Texas Deceptive Trade Practices Act," ¶ 130, is insufficient to plead "consumer" status under the DTPA. However, "[t]he DTPA does not require a party to specifically refer to itself as a "consumer" when pleading its cause of action under the act. The complaining party need only allege facts showing that it fits within the act's definition of consumer." *Kuper v. Stewart Title Guar. Co.*, No. 01–00–00777–CV, 2002 WL 31429754, at *4 (Tex.App.-Houston [1 Dist.] Oct. 31, 2002, no pet.) (internal citations omitted).[10]

 To qualify as a consumer under the DTPA, (1) the person must have sought or acquired goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. Tex. Bus. & Com.Code § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). In limited situations, Texas courts have recognized that a party who was not the direct purchaser of "goods or services" may qualify as a "consumer" under the Act. *See, e.g., Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985) (holding that an employee who was covered under an employer provided insurance policy qualified as a "consumer" under the DTPA because employer had purchased policy for the employee's benefit); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (1981) (holding that purchasers of house who brought DTPA claim against seller's agent for misrepresenting the quantity of the house's square feet qualified as "consumer" under the Act even though purchasers

did not actually seek or acquire goods or services directly from the agent). However, Texas courts have also held that "[a] party whose only relation to an insurance policy is to seek policy proceeds is not a 'consumer' " under the DTPA. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 274 (Tex.1995). *See also Caplinger v. Allstate Ins. Co.*, 140 S.W.3d 927, 931 (Tex.App.-Dallas 2004, no pet.) ("Third-party claimants lack standing to assert direct claims against an insurance company for violations of ... the Texas Deceptive Trade Practices Act."); *Universal Sur. of Am. v. Cent. Elec. Enters. & Co.*, 956 S.W.2d 627, 629 (Tex.App.-San Antonio 1997, pet. denied) ("a third-party claimant seeking proceeds under an insurance policy is not a 'consumer' under the DTPA."). Accordingly, because Encompass's only relation to the United plans is to seek the proceeds of those plans, the court finds that Encompass does not qualify as a "consumer" under the Act.

 The court also finds unconvincing Encompass's argument that even if it were not a "consumer" under the DTPA, and could not bring the DTPA claim on its own behalf, it could still bring a DTPA claim as assignee of its patients' plans. As pointed out by the Defendants, the Texas Supreme Court has held that "DTPA claims generally cannot be assigned." *PPG Industries, Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex.2004). This is because "assigning DPTA claims would defeat the primary purpose of the statute—to encourage individual consumers to

**10.** In support of its argument that Encompass must specifically plead consumer status under the DTPA, the Defendants cite *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09–CV–370, 2010 WL 1026968, at *9 (E.D.Tex. Feb. 16, 2010) (Mazzant, J.). The Defendants' reliance on *Burnette* is misplaced. While the court did recognize that the plaintiff in that case "allege[d] that he is a 'consumer,' but he [did]

not allege why," the court stated in the very next sentence that "[t]his is of no consequence" because the plaintiff's relationship with defendant precluded "consumer" status. *Id.* Thus, contrary to the Defendants' assertion, the court in *Burnette* made no finding as to the standard required to plead "consumer" status under the DTPA.

bring such claims themselves." *Id.* at 82. While Encompass attempts to limit the holding of *PPG Industries* to its particular facts, the court disagrees and finds no compelling reason to do so. Out of the dozens of cases that have relied on *PPG Industries,* Encompass has not provided, and the court could not locate, a single decision dealing with the assignability of DTPA claims that limited *PPG Industries* in such a manner, and the court declines to do so here. Encompass also emphasizes that the holding in *PPG Industries* was that "DTPA claims *generally* cannot be assigned," *Id.* at 92 (emphasis added), and that this is, or should be, one of the times that an exception applies. However, a reading of the *PPG Industries* decision suggests that the court qualified its holding with the word "generally" only because elsewhere in the decision the court clarified that its holding did not reach whether "DTPA claims survive to a consumer's heirs" and whether "claims that were created within and could not be brought without the DTPA" could be assigned. *Id.* at 91–92. The court also noted that its holding did not prohibit "equitable assignments, such as a contingency-fee interest assigned to a consumer's attorney." *Id.* at 92. This court finds that none of those exceptions apply here, and that the *PPG Industries* decision precludes Encompass from bringing a DTPA claim in reliance on assignments from United's insureds.

Accordingly, because the court finds that Encompass lacks standing to bring a DTPA claim on its own behalf or on behalf of its patients, the court **GRANTS** the Defendants' motion to dismiss Encompass's DTPA claim. And because the court finds that Encompass could plead no facts that would enable it to overcome the authorities set forth above barring it from bringing DTPA claims, the court declines to grant Encompass leave to amend these claims.

In light of the court's dismissal of Encompass's DTPA claim for lack of standing, the court finds moot and will not address the Defendants' argument that because the DTPA claim is predicated on the same misrepresentations and omissions as the fraud claim, it must satisfy, but fails to satisfy, the pleading requirements of Rule 9(b). Accordingly, that motion is **DENIED.**

### c. Texas Insurance Code

#### i. Claim under § 543.001

The SAC alleges that United violated § 543.001 of the Texas Insurance Code, which prohibits health insurers from misrepresenting the terms of a policy or other benefits or advantages provided by the policy. The Defendants argue, and Encompass does not contest, that § 543.001 does not provide a private right of action for violations of that section. Encompass, however, argues that § 543.001 is actionable under § 541.061, which provides in relevant part that:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

Unlike § 543.001, § 541.061 is made actionable under § 541.151, which provides a private right of action for violations of certain provisions of the Act, including § 541.061 but not § 543.001.

In addition to the claim under § 543.001, the SAC alleges that United violated § 541.061, the provision set forth above. The court finds that the presence of the § 541.061 claim in the SAC precludes the § 543.001 claim. Even assuming that Encompass is correct that § 541.061 can be used to bring a claim under § 543.001, a proposition which Encompass advocates solely on the basis of a stretched reading of the statutes, the court finds that these claims are impermissibly duplicative. Sections 543.001 and 541.061 prohibit the same conduct, namely, prohibiting any entity engaged in the business of insurance from misrepresenting insurance policies. The SAC relies on the same set of allegations for both claims. Yet while one provision, § 541.061, provides a private cause of action, the other, § 543.001, does not. For these reasons, the court finds that Encompass cannot rely on § 541.061 to bring a claim for an alleged violation of § 543.001 and also bring a § 541.061 claim on the same set of allegations. Consequently, the court **GRANTS** the Defendants' motion to dismiss Encompass's § 543.001 claim. And because the court finds that Encompass could plead no facts that would enable it to bring a § 543.001 claim alongside a § 541.061 claim, assuming the § 543.001 claim is even cognizable, the court declines to grant Encompass leave to amend this claim.

### ii. Claims under §§ 1301.051 and 1301.053

The SAC alleges that the Defendants violated §§ 1301.051 and 1301.053 of the Texas Insurance Code. Section 1301.051 requires insurers to "afford a fair, reasonable, and equivalent opportunity to apply to be and to be designated as a preferred provider ...," and § 1301.053 provides that "[a]n insurer that does not designate a practitioner as a preferred provider shall provide a reasonable mechanism for re-

viewing that action." The Defendants argue that these claims must be dismissed because § 1301.051 also states that it only applies when the "preferred provider" applicant is "licensed to treat injuries or illnesses ...," and the SAC admits that Encompass is not licensed, see ¶¶ 13, 70, 76, and 107. Encompass's briefs in reply do not contest this argument and, therefore, the court finds that Encompass has conceded that it cannot bring claims under §§ 1301.051 and 1301.053. Accordingly, the court **GRANTS** the Defendants' motion to dismiss these claims. And because the court finds that Encompass could plead no facts that would enable it to bring these claims, the court declines to grant Encompass leave to amend this claim.

### iii. Claims under § 542.058 or Chapter 843

The SAC alleges that United violated the Texas Prompt Payment Law as set out in § 542.058 "or" Chapter 843 of the Texas Insurance Code by "failing to promptly and properly reimburse Encompass." ¶ 126. The Defendants argue that Encompass's claim under Chapter 843 should be dismissed because Encompass failed to identify which provision of Chapter 843 was allegedly violated. Encompass appears to have conceded this argument because it did not respond to it in two subsequent briefs to the court. Therefore, the court finds that it is appropriate to **GRANT** the Defendants' motion to dismiss Encompass's claim under Chapter 843 for failure to put Defendants on notice as to which provision of that Chapter United allegedly violated. The claim is dismissed without prejudice, and Encompass is given leave to amend it to the extent necessary to remedy deficiencies identified herein.

Section 542.058 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested

and required ... delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall [be liable]." The Defendants argue that Encompass's claim under § 542.058 should be dismissed because that provision applies only when an insurer has delayed payment of a claim, but not when an insurer has denied payment. In other words, the Defendants appear to argue that, unlike what has occurred in this case, § 542.058 applies only when the insurer has not already refused to pay a claim. The court disagrees. "A wrongful rejection of a claim may be considered a delay in payment for purposes of [§ 542.058]." *Teate v. Mutual Life Ins. Co. of New York*, 965 F.Supp. 891, 893 (E.D.Tex.1997). *See also United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 474 (Tex.App.-Dallas 2005, no pet.) (holding the same and stating that "[w]hen an insurance company denies a claim, it runs the risk that its decision may be wrong and subject it to liability [for failure to promptly pay]."). Encompass has sufficiently alleged that its claims were wrongfully rejected. The court, therefore, declines to grant the Defendants' motion to dismiss the § 542.058 claim for failure to allege a delay in payment.

■■■ Additionally, the Defendants argue that Encompass has not stated a claim under § 542.058 because it is not a proper claimant under the Act. Specifically, the Defendants cite § 542.051, which defines the term "claim" as "a first-party claim that is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and must be paid by the insurer directly to the insured or beneficiary." However, as pointed out by Encompass, the Defendants cite no authority to support their contention that the assignments Encompass received do not provide it with status to bring a claim under § 542.058.

And given the Fifth Circuit's policy in favor of granting derivative standing to assignees of health plan benefits, the court will not refuse assignee standing at this stage of the case without authority holding otherwise. Accordingly, the Defendants' motion to dismiss Encompass's claim under § 542.058 of the Texas Insurance Code is **DENIED.**

### iv. Claim under § 1301.068

■■■ The SAC alleges that the Defendants violated § 1301.068 of the Texas Insurance Code, which prohibits an insurer from using "any financial incentive or make payment to a physician or healthcare provider that acts directly or indirectly as an inducement to limit medically necessary services." In support of this claim, the SAC states that "United encourages medical providers to limit the use of Encompass or otherwise limit medically necessary services provided by Encompass." ¶ 122. The Defendants argue that the SAC fails to state a claim under § 1301.068 because it contains no allegations that United used financial incentives or payments as an inducement to limit medically necessary services. Instead, the SAC merely states that United "encourages" medical providers to limit services. The court agrees with the Defendants. The use of financial incentives or payments is a key element under the statute that must be pled with enough factual support to make the claim plausible. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Accordingly, the court **GRANTS** the Defendants' motion to dismiss Encompass's claim under § 1301.068. The claim is dismissed without prejudice, and Encompass is given leave to amend it to the extent necessary to remedy deficiencies identified herein.

### v. Claims under Chapter 541

■■■ Regarding Encompass's claims under Chapter 541 of the Texas Insurance

Code, more particularly claims under §§ 541.051, 541.060, and 541.061, which are provisions that in some fashion prohibit insurers from misrepresenting policy coverage, the Defendants argue that they must be dismissed because they fail to satisfy the heightened pleading requirements under Rule 9(b). In response, Encompass argues that Rule 9(b) does not apply to claims for violations of the Texas Insurance Code, but even if it does, Encompass's claims are sufficient.

The court has already applied Rule 9(b) to Encompass's common law negligent misrepresentation claim. *See supra.* Because Encompass's claims under §§ 541.051, 541.060, and 541.061 are based on the same set of allegations as Encompass's common law negligent misrepresentation claim, the court finds it appropriate to apply Rule 9(b) to the statutory claims as well as the common law claims. *See Berry v. Indianapolis Life Ins. Co.,* 608 F.Supp.2d 785, 800 (N.D.Tex.2009) (holding that Rule 9(b) applied to claims under Chapter 541 of the Texas Insurance Code that were based on the same set of allegations as common law fraud and negligent misrepresentation claims.); *Reece v. Chubb Lloyds Ins. Co. of Texas,* No. H–11–507, 2011 WL 841430 (S.D.Tex. March 8, 2011) (applying Rule 9(b) to claims under the Texas Insurance Code for fraud and misrepresentation.). And because the statutory claims are based on the same set of allegations as the common law negligent misrepresentation claim, and because the court finds that Rule 9(b) provides the appropriate pleading standard for both claims, the court adopts for the statutory claims its analysis and findings for the negligent misrepresentation claim. *See supra.* Accordingly, the Defendants' motion to dismiss Encompass's claims under §§ 541.051, 541.060, and 541.061 for failure to state a claim is **DENIED**. Additionally, as the court did with the negligent misrepresentation claim, Encompass is granted leave to amend allegations in support of its claims under these provisions to the extent necessary to remedy the deficiencies identified herein.

## 8. Promissory Estoppel

 The Defendants argue that the SAC fails to state a claim for promissory estoppel. Encompass has brought the promissory estoppel claim as an "alternative cause of action." The elements of a promissory estoppel claim in Texas are (1) a promise, (2) the promisor foreseeing that the promisee will rely on the promise, and (3) detrimental reliance by the promisee. *Jones v. Landry's Seafood Inn & Oyster Bar–Galveston, Inc.,* 328 S.W.3d 909, 913 (Tex.App.-Houston [14 Dist.] 2010, no pet.). The Defendants argue that the SAC fails to sufficiently plead all three elements. Encompass counters by listing the following allegations in the SAC that it argues support its promissory estoppel claim:

> Defendants represented that procedures were covered under the policies (SAC ¶ 134);
>
> Defendants promised to reimburse Encompass if it submitted requests for reimbursement on the UB form with the SU modifier (*Id.*);
>
> Defendants made promises to timely and properly reimburse patients (and thereby Encompass through the Assignments of Benefits) for out-of-network outpatient surgical care performed in a physician's office (*Id.*);
>
> Yet, when the time came, Defendants denied reimbursement or reimbursed at the inappropriate UCR rate (*Id.*);
>
> Encompass justifiably relied on Defendants' promises to its detriment and Encompass's reliance was foreseeable considering Encompass had no ability to learn how Defendants wanted Encompass to bill or whether procedures were

covered by the plans separate and apart from Defendants' representations (SAC ¶¶ 101, 135); and

Defendants intended for Encompass to rely on its representations. And Encompass justifiably relied on Defendants' material representations to its detriment (SAC ¶ 101).

Dkt. 51, pg. 57.

The court agrees with Encompass and finds that it has sufficiently pled a claim for promissory estoppel. Accordingly, the Defendants' motion to dismiss the claim is **DENIED.**

### 9. Quantum Meruit

■ The Defendants argue that the SAC fails to state a claim for quantum meruit. Like the promissory estoppel claim, Encompass has brought the quantum meruit claim as an "alternative cause of action." "To recover under quantum meruit a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). "In addition, the evidence must show that the efforts were undertaken for the person to be charged and not just that the efforts benefitted that person." *KUV Partners, LLC v. Fares,* No. 02–09–00246–CV, 2011 WL 944453, at *16 (Tex.App.-Fort Worth March 17, 2011, no pet.) (citing *McFarland v. Sanders,* 932 S.W.2d 640, 643 (Tex.App.-Tyler 1996, no pet.)).

■ The Defendants argue that the quantum meruit claim fails because Encompass has not alleged that any services were provided specifically for the Defendants. Encompass counters that it has provided valuable services to United by rendering medical services to individuals for whom United has a contractual obligation to pay health benefits. The court agrees with the Defendants. Even if United received some benefit as a result of Encompass providing medical services to its insureds, a proposition the court finds dubious,[11] Encompass's services were rendered to and for its patients, not United. Because the court finds that Encompass has failed to plead a key element required under its quantum meruit theory of recovery, namely, that "services were rendered … for the person sought to be charged," the court **GRANTS** the Defendants' motion to dismiss the quantum meruit claim. And because the court finds that Encompass could plead no facts that would enable it to bring a claim against United on the basis of quantum meruit, the court declines to grant Encompass leave to amend this claim.

### 10. Request for Declaratory Judgment

■ Encompass seeks a declaratory judgment that it is "not required to reimburse United any amount that it has paid Encompass, and that United is required to reimburse Encompass on its outstanding unpaid claims." The Defendants argue that Encompass has failed to plead allega-

---

11. On this point the court is more inclined to agree with the Southern District of New York in *Travelers Indem. of Conn. v. Losco Group,* 150 F.Supp.2d 556, 563 (S.D.N.Y.2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.").

tions suggesting that it has a contractual duty to reimburse Encompass. Encompass counters by listing the following allegations in the SAC that it argues support its request for a declaratory judgment:

[T]he plans and policies between United and its insureds under which United is contractually obligated to pay to [sic] a percentage of the charges for medical services after deductible for out-of-network outpatient surgery constitute valid contracts (SAC ¶¶ 1, 35–37, 39, 93);

Encompass owns the contractual claims for reimbursement pursuant to Assignments of Benefits from its patients/United's insured's (SAC ¶ 1, 38, 93);

Defendants have breached the contracts by denying most claims since June 2009 and demanding that Encompass reimburse Defendants for all payments made prior to June 1, 2009 (SAC ¶¶ 38, 64, 66, 93–94, Exhibit 4);

the specific provisions breached by Defendants include those relating to coverage and payment for medical providers that are "out-of-network," including those for surgeries performed in a physician's office (SAC ¶¶ 31–40);

Encompass tendered performance by providing its services to United's insureds (SAC ¶ 95); and

Encompass was damaged as a result of the breach (SAC ¶ 93–95).

In addition, the spreadsheet attached as Exhibit 3 to the SAC contains specific information regarding the claims and health care plans and policies on which Encompass's causes of action are based.

Dkt. 51, pg. 61.

In their reply brief, the Defendants did not respond to Encompass's rebuttal; indeed, the Defendants' reply brief did not even address the request for a declaratory judgment. The court agrees with Encompass and finds that it has pled enough allegations to support its request for declaratory judgment. Accordingly, the De-

fendants' motion to dismiss the request is **DENIED.**

## 11. ERISA Claims

The Defendants argue on several grounds that Encompass's claims under the ERISA statute should be dismissed. The court will first address the Defendants' argument that they are not proper defendants to Encompass's ERISA claims.

### a. Proper Defendant

██ The Defendants argue that the only proper defendant in an action under 29 U.S.C. § 1132(a)(1)(B) is the benefit plan itself. They cite several decisions by district courts within the Fifth Circuit which have so held. E.g., *Sikes v. Life Ins. Co. of N. Am.*, No. 08–1969, 2009 WL 4351474, at *2 (W.D.La. Dec. 1, 2009); *Johnson v. Hartford Life & Accident Ins. Co.*, No. H09–56, 2009 WL 540959, at *3 (S.D.Tex. March 4, 2009). Encompass counters with citations to several other district court decisions within the Fifth Circuit that hold otherwise, namely, that any entity that makes benefit determinations or has control over plan administration qualifies as a proper defendant in a suit under § 1132(a)(1)(B). E.g., *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, No. H–09–0646, 2010 WL 565283, at *3 (S.D.Tex. Feb. 17, 2010) (Werlein, J.); *Bernstein v. Citigroup, Inc.*, No. 3:06–cv–209–M, 2006 WL 2329385, at *5–7 (N.D.Tex. July 5, 2006).

The decisions cited by Encompass, and other decisions within the circuit holding the same, generally rely on the Fifth Circuit's decision in *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349–50 (5th Cir.2003), in which the court held that an employer, who was also the plan sponsor and administrator, was a proper defendant in an action under § 1132(a)(1)(B). The employer had argued

that 29 U.S.C. § 1132(d)(2) limits the source of recovery under § 1132(a)(1)(B) to the amounts of the plans and therefore that the pension plan itself is the only proper defendant.[12] The court reasoned that "while the language [of § 1132(d)(2)] suggests that the plan is the only proper party defendant ... [the plan] has no meaningful existence separate from [the employer]." *Id.* at 350. Moreover, the court reasoned, the employer is the proper defendant because it was the entity that made the final call on benefit determinations. *Id.* Thus, while the *Musmeci* decision dealt specifically with whether an employer can be a proper defendant under § 1132(a)(1)(B), district courts within this circuit have recognized its application to suits brought against insurers and plan administrators in addition to employers. *See, e.g., Kinnison v. Humana Health Plan of Texas, Inc.,* No. C–07–381, 2008 WL 2446054, at *10–11 (S.D.Tex. June 17, 2008) (Jack, J.); *Sanborn–Alder v. CIGNA Grp. Ins.,* No. H–09–0806, 771 F.Supp.2d 713, 716–17, 719–24, 2011 WL 643216, at *2, *6–8 (S.D.Tex. Feb. 15, 2011) (Harmon, J.).

The court finds persuasive a recent decision by the Southern District of Texas. In *North Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare,* No. 4:09–cv–2556, 782 F.Supp.2d 308, 2011 WL 819490 (S.D.Tex. March 2, 2011) (Ellison, J.), the plaintiff, a full service hospital, brought, among other claims, a claim under § 1132(a)(1)(B) against CIGNA, an insurer and plan administrator, alleging that CIGNA had underpaid the hospital for out-of-network and emergency services provided to CIGNA's insureds. In a motion to dismiss under Rule 12(b)(6), CIGNA argued that it was not a proper defendant because

§ 1132(a)(1)(B) claims may only be brought against a benefit plan and that it itself was not a benefit plan. Relying on *Musmeci* and decisions from the First, Third, Seventh, and Eleventh Circuit Courts of Appeals, the *North Cypress* court held that "apart from a benefit plan itself, persons or entities having responsibility for administering benefits are proper parties to a [§ 1132(a)(1)(B)] suit." *Id.* at 320, at *10. The court reasoned that any entity that "was responsible for making determinations to pay benefits ... and exerts control over plan administration in a manner that harms [the plaintiff]" qualified as a proper defendant under the statute. *Id.* Accordingly, the court held that the hospital had pled enough facts suggesting that CIGNA held sufficient control over plan administration to make it a proper defendant in a § 1132(a)(1)(B) suit. *Id.*

Because the court finds the *North Cypress* decision to be on all fours with the instant case and sound in reasoning, the court likewise holds that Encompass has pled enough facts suggesting that United held sufficient control over plan administration to make it a proper defendant in a § 1132(a)(1)(B) suit. Therefore, the Defendants' motion to dismiss Encompass's ERISA claims on the basis of not being proper defendants is **DENIED**.

#### b. Exhaustion of Remedies

█ The Defendants argue that Encompass has not alleged exhaustion of administrative remedies, which it claims is a prerequisite to filing ERISA claims. Encompass counters that exhaustion of remedies is an affirmative defense and it does not have to be pled. The court agrees with Encompass. As pointed out by En-

---

**12.** Section 1132(d)(2) states that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."

compass, the Fifth Circuit has held that exhaustion of remedies is an affirmative defense and plaintiffs "need not 'specially plead or demonstrate exhaustion in their complaints' to avoid 12(b)(6) dismissal." *Wilson v. Kimberly–Clark Corp.*, 254 Fed. Appx. 280, 287 (5th Cir.2007) (reversing district court's dismissal of plaintiff's ERISA claims for failure to plead exhaustion of administrative remedies) (quoting *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).[13] Accordingly, because Encompass did not have to plead exhaustion of administrative remedies to survive the pleading stage, the Defendants' motion to dismiss Encompass's ERISA claims on that ground is **DENIED.**

### c. § 1132(a)(1)(B) and Specific Plan Provisions

■ The Defendants argue that Encompass fails to state a claim under 29 U.S.C. § 1132(a)(1)(B), which provides a cause of action for a plan beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Defendants argue that Encompass's claim under this statute fails because the SAC does not specifically identify the provisions of the United plans that United allegedly breached. The Defendants asserted this same argument against Encompass's common law breach of contract claim. *See supra.* The court rejected that argument, and it does so again here. Encompass's allegations contain enough facts about contract provisions to make its § 1132(a)(1)(B) claim plausible and to give United notice as to which

provisions it allegedly breached. Accordingly, the Defendants' motion to dismiss the claim on that ground is **DENIED.**

### d. § 1132(a)(1)(B) and Ingenix Reimbursement Methodology

■ The Defendants argue that Encompass's claims under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) relating to United's use of the Ingenix Databases for its reimbursement methodology fails to state a claim upon which relief can be granted. Section 1132(a)(1)(B) is quoted above. Section 1132(a)(3) provides a cause of action for plan beneficiaries "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan." Encompass counters by listing the following allegations in the SAC that it argues support these claims:

> Defendants are contractually obligated to pay a percentage of the reasonable and customary charge (also known as the "RAC" rate, or the usual, customary and reasonable rate ("UCR rate") after deductible for out-of-network outpatient surgery and anesthesia, for physician's office services, and for supplies and equipment used for office-based surgeries. SAC ¶ 39.
>
> Defendants represent to members that the "reasonable and customary charge" refers to an amount set by the health plan by comparing the actual charge for the service or supply with the prevailing

---

**13.** Following the *Kimberly–Clark* decision, district courts in this circuit have likewise held that plaintiffs bringing ERISA claims need not plead exhaustion of administrative remedies to survive a motion to dismiss under either Rule 12(b)(1) or 12(b)(6). *See, e.g., North Cypress Med. Ctr. Operating Co. v. CIG-* *NA Healthcare,* No. 4:09–cv–2556, 782 F.Supp.2d 308, 317–18, 2011 WL 819490, at *7 (S.D.Tex. March 2, 2011); *Odom v. American Nonwovens Corp.,* No. 1:08–CV–299–SA–JAD, 2010 WL 3782426, at *2 (N.D.Miss. Sept. 20, 2010);

charges and takes into account all pertinent factors, including: the complexity of the service; the range of services provided; and the prevailing charge level in the geographic area where the provider is located and other geographic areas having similar medical cost experiences. *Id.*

Defendants' representations were untrue, because Defendants used flawed or inadequate data to determine UCR amounts, which resulted in reimbursements well below actual UCR for such out-of-network medical services. SAC ¶ 40.

An investigation by the New York Attorney General concluded that the out-of-network system was broken, that United was misleading its patients in its policy language, and that United was hiding the inherent conflict of interest that existed when its wholly-owned subsidiary was preparing schedules that were supposed to reflect the market at large. SAC ¶ 48.

Dkt. 51, pg. 68.

These allegations, combined with an abundance of others in Paragraphs 39–63 of the SAC, succeed in making plausible Encompass's claims under § 1132(a)(1)(B) and § 1132(a)(3) relating to United's use of the Ingenix Databases for its reimbursement methodology. Accordingly, the Defendants' motion to dismiss the claim is **DENIED.**

### e. § 1132(a)(3) Claim Duplicative of § 1132(a)(1)(B) Claim

██ Again, with regard Encompass's claims under § 1132(a)(1)(B) and § 1132(a)(3), which relate to United's use of the Ingenix Databases for its reimbursement methodology, the Defendants argue that the § 1132(a)(3) claim should be dismissed because it is impermissibly duplicative of the § 1132(a)(1)(B) claim. It is well established in the Fifth Circuit that a

potential beneficiary may not sue under § 1132(a)(3) while seeking the same relief under § 1132(a)(1)(B). *See Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339, 349 n. 5 (5th Cir.2003) (pointing out that because plaintiffs were found to have an adequate remedy at law under § 1132(a)(1)(B), they were foreclosed from equitable relief under (a)(3)). Additionally, Encompass has apparently conceded this argument by not responding to it in two subsequent briefs to the court. Accordingly, the court **GRANTS** the Defendants' motion to dismiss the § 1132(a)(3) claim. And because the court finds that Encompass could plead no additional facts that would enable it to bring a § 1132(a)(3) claim in addition to its § 1132(a)(1)(B) claim, the court declines to grant Encompass leave to amend the claim.

### f. Disclosure of Plan Documents

██ The Defendants argue that Encompass's claim regarding disclosure of plan documents fails to state a cognizable claim. The relevant allegation in the SAC states that "by applying a reduction in the UCR that was not authorized or disclosed to members/subscribers/policyholders in their plan documents, United failed to provide accurate plan documents." ¶ 146. Absent from the allegation is any legal basis for a claim. Consequently, the court agrees with the Defendants and their motion to dismiss the claim is **GRANTED.** The claim is dismissed without prejudice, and Encompass is given leave to amend it to the extent necessary to remedy deficiencies identified herein.

### g. Right of Action under § 1133(2)

The Defendants argue that Encompass's claim under 29 U.S.C. § 1133(2) must be dismissed because that provision does not provide a private right of action. Section 1133(2) dictates that "every employee ben-

efit plan shall afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Encompass alleges that "by failing to disclose the true 'specific reasons' for such denials and failing to disclose data and/or the methodology used to determine UCR," United has violated § 1133(2). In response, Encompass appears to concede that § 1133 does not provide an independent basis for a claim but argues that "[a]s stated in paragraph 147 of the SAC, Encompass seeks damages under § 1132(a)(1)(B) for damages resulting from Defendants' violation of § 1133." Dkt. 51, pg. 71. While it is true that courts have recognized claims under § 1132(a)(1)(B) for violations of § 1133, *see Leake v. Kroger Texas, L.P.*, No. 3:04–cv–2702–D, 2006 WL 2842024, at *3 (N.D.Tex. Sept. 28, 2006), the court finds that, contrary to Encompass's assertion, § 1132(a)(1)(B) is nowhere mentioned in ¶ 147 of the SAC. Consequently, the court finds that the SAC does not state a claim on that basis. Encompass is granted leave to amend allegations in support of this claim to the extent necessary to remedy the deficiencies identified herein.

However, the Fifth Circuit has recognized that violations of § 1133(2) can "give rise to a substantive damage remedy . . . when the violations are continuous and amount to substantive harm." *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir.2009). Whether Encompass can prove violations of § 1133(2) is a question more suited for the summary judgment stage. But for the pleading stage, the court finds Encompass has alleged enough facts to make a claim under § 1133(2) appear facially plausible. Accordingly, the Defendants' motion to dismiss Encompass's § 1133(2) claim is **DENIED**. *See Clontz v. Life Ins. Co. of N. Am.*, No. 3:08–cv–1947–B, 2009 WL 1491203, at *2–4 (N.D.Tex. May 28, 2009) (treating motion to dismiss claim under § 1133(2) in the same manner).

## III. CONCLUSION

Regarding standing, the court **HOLDS** that Encompass has standing to bring this civil action in reliance on the assignments of benefits that it received from United's insureds. Regarding ERISA preemption, the court **HOLDS** that the (1) state law claims relating to plans not governed by ERISA are not preempted by ERISA, (2) state law claims for breach of contract, quantum meruit, violations of the DTPA, and violations of the Texas Insurance Code not based on negligent misrepresentation or fraud are preempted by ERISA, with leave to amend granted to Encompass to refile these claims as claims under § 502(a), and (3) state law claims for negligent misrepresentation under both the common law and the Texas Insurance Code, fraud, promissory estoppel, defamation and business disparagement are not preempted by ERISA.

Regarding United's Rule 12(b)(6) motions, the court **DENIES** the following: (1) motion to dismiss for failure to state a breach of contract claim; (2) motion to dismiss for failure to state a negligent misrepresentation claim; (3) motion to dismiss for failure to state a defamation claim; (4) motion to dismiss DTPA and Texas Insurance Code claims for failure to provide pre-suit notice; (5) motion to dismiss for failure to state a DTPA claim (however, as noted below, the court has granted the motion to dismiss the DTPA claim for lack of standing); (6) motion to dismiss for failure to state a claim under § 542.058 of the Texas Insurance Code; (7) motion to dismiss for failure to state claims under §§ 541.051, 541.060, and 541.061 of the Texas Insurance Code; (8) motion to dismiss for failure to state a

promissory estoppel claim; (9) motion to dismiss request for declaratory judgment; (10) motion to dismiss ERISA claims for failure to name proper defendants; (11) motion to dismiss ERISA claims for failure to plead exhaustion of remedies; (12) motion to dismiss claim under 29 U.S.C. § 1132(a)(1)(B) for failure to plead specific plan provisions; (13) motion to dismiss for failure to state claims under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) relating to United's use of the Ingenix Databases; and (14) motion to dismiss for failure to state a claim under 29 U.S.C. § 1133(2).

Alternatively, the following 12(b)(6) motions are **GRANTED,** but with leave to amend **GRANTED** to Encompass: (1) motion to dismiss for failure to state a fraud claim; (2) motion to dismiss for failure to state a business disparagement claim; (3) motion to dismiss for failure to state a claim under Chapter 843 of the Texas Insurance Code; (4) motion to dismiss for failure to state a claim under § 1301.068 of the Texas Insurance Code; and (5) motion to dismiss for failure to state a claim regarding disclosure of plan documents. Should it choose to do so, Encompass is **GRANTED** twenty days from the date of this order to replead any claim or allegation found deficient by this order.

Finally, the following 12(b)(6) motions are **GRANTED,** but with no leave to amend granted to Encompass: (1) motion to dismiss DTPA claim for lack of standing; (2) motion to dismiss for failure to state a claim under § 543.001 of the Texas Insurance Code; (3) motion to dismiss for failure to state claims under §§ 1301.051 and 1301.053 of the Texas Insurance Code; (4) motion to dismiss for failure to state a quantum meruit claim; and (5) motion to dismiss claim under 29 U.S.C. § 1132(a)(3)

for being duplicative of the § 1132(a)(1)(B) claim.

**IT IS SO ORDERED.**