Christopher DAVIS, Appellant

v.

HENDRICK AUTOGUARD, INC., McKinney Automotive Company, Limited Partnership, and First Extended Service Corporation, Appellees.

No. 05–08–00682–CV.

Court of Appeals of Texas, Dallas.

Aug. 25, 2009.

Christopher L. Davis, Law Office of Christopher L. Davis, Addison, TX, pro se.

Mark A. Waite, N. Terry Adams, Jr., Beirne, Maynard & Parsons, L.L.P., Houston, TX, for Appellee.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

In this appeal from a summary judgment, Christopher Davis challenges the trial court's dismissal of his claims on the ground that he lacked standing to assert them. Davis also contends the trial court erred in transferring this lawsuit from the district court in Dallas County to the district court in Collin County. For the reasons set forth below, we reverse the trial court's judgment in part and affirm it in part.

### I.

At the center of this dispute is an extended service agreement purchased by Davis in 2003 in connection with his purchase of an automobile. Davis purchased a car from McKinney Automotive Company, Limited Partnership d/b/a Honda Cars of McKinney and, at the same time, signed an extended service agreement with Hendrick Autoguard, Inc. Davis paid $1,600 for extended service protection and the amount was included in the financing for the car. According to Davis, he was not provided with a copy of the service agreement at the time of the purchase.

Approximately three years later, Davis requested a copy of the extended service agreement. Davis alleges he made numerous requests for a copy and numerous promises were made that one would be delivered. Davis did not receive the document until five months after his first request. Davis further alleges the defendants did not provide him with a copy of the agreement until he threatened to exercise his right to void the contract pursuant to the Service Contract Regulatory Act (SCRA).

After receiving a copy of the service agreement, Davis filed suit against Hendrick and McKinney Automotive alleging the agreement was illegal under Texas statutory law. Davis specifically alleged that the agreement violated the SCRA because it did not set forth the conditions under which the contract holder may void the contract as required by section 1304.157 of the Act. Instead, the contract set forth different conditions for cancellation than those that were statutorily required. Davis sought a declaratory judgment that the contract was illegal, along with restitution of the purchase price. He also sought an injunction preventing the defendants from entering into service contracts in the future until the contracts complied with statutory requirements. Davis purported to sue on behalf of both himself and other individuals similarly situated and requested certification of the suit as a class action under Texas Rule of Civil Procedure 42.[1]

The defendants answered and moved to transfer venue of the case to Collin County. The defendants argued that all or a substantial part of the alleged events occurred in Collin County, the car dealership had both its principal office and domicile in Collin County, and both convenience and the interest of justice dictated venue in

---

1. A class was never certified by the trial court, and Davis does not challenge the failure to certify on appeal.

Collin County. Shortly before the venue hearing, Davis filed his second amended petition adding First Extended Service Corporation as a defendant. FESC was the third-party administrator of the service agreement pursuant to a contract between it and Hendrick. In addition, FESC had offices in Dallas County. Davis also, for the first time, alleged a claim under the Texas Deceptive Trade Practices Act. Five days later, the trial court in Dallas County signed an order granting the motion to transfer and ordered the case be transferred to a district court in Collin County. FESC answered the suit in Dallas County and joined the already-granted motion to transfer venue. Davis filed a motion to reconsider the order transferring venue. The trial court denied Davis's motion and transferred the case to the 416th Judicial District Court in Collin County.

Following the transfer, the defendants moved for summary judgment. In their motion, the defendants argued that all of Davis's claims were based on an alleged violation of section 1304.157 of the SCRA and there was no private right of action to seek relief under that statute. Davis responded that the plain language of the SCRA evidenced an intent to create a private right of action. The trial court held a hearing on the motion and granted summary judgment in favor of the defendants, dismissing all of Davis's claims. Davis then brought this appeal challenging both the summary judgment and the transfer of venue.

## II.

■ We first address the issue of the trial court's transfer of venue in the case from Dallas County to Collin County. In their motions, the defendants set forth several grounds to transfer venue, including section 15.002(b) of the Texas Civil Prac-

tice and Remedies Code. Section 15.002(b) allows a district court to transfer an action "[f]or the convenience of the parties and witnesses and in the interest of justice." TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(b) (Vernon 2002). In its order granting the motion, the trial court did not specify what ground it relied upon.

Section 15.002(c) states that a trial court's decision to grant or deny a transfer under subsection (b) "is not grounds for appeal or mandamus and is not reversible error." *Id.* § 15.002(c). The effect of section 15.002(c) is to preclude any appellate review of an order transferring venue under section 15.002(b). *See Trend Offset Printing Servs., Inc. v. Collin County Cmty. College Dist.*, 249 S.W.3d 429, 430 (Tex.2008) (per curiam); *Garza v. Garcia*, 137 S.W.3d 36, 39 (Tex.2004). Because defendants' motions raised 15.002(b) as a ground to transfer venue and the trial court did not state in its order the ground upon which it relied in granting the motions, we are statutorily prohibited from reviewing the order. *See Trend*, 249 S.W.3d at 430. We resolve this issue against Davis.

## III.

We next address Davis's contention that the trial court erred in concluding there was no private right of action for a violation of section 1304.157 of the SCRA. Section 1304.157 states

A service contract must require the provider to allow the service contract holder to return the contract to the provider not later than:

(1) the 20th day after the date the contract is mailed to the service contract holder; or

(2) the 10th day after the date of delivery, if the contract is delivered to the service contract holder at the time of sale.

TEX. OCC.CODE ANN. § 1304.157 (Vernon 2004). In arguing that a private right of action exists under this section, Davis relies primarily upon the language of the section that follows it. Section 1304.158 states

> (a) If a service contract holder returns a service contract in accordance with Section 1304.157 and a claim has not been made under the contract before the contract is returned, the contract is void.
>
> . . .
>
> (c) If a service contract is voided, the provider shall refund to the service contract holder or credit to the account of the service contract holder the full purchase price of the contract. If the provider does not pay the refund or credit the service contract holder's account before the 46th day after the date the contract is returned to the provider, the provider is liable to the service contract holder for a penalty each month an amount remains outstanding. The monthly penalty may not exceed 10 percent of the amount outstanding.

*Id.* § 1304.158. Davis argues that the phrase "liable to the service contract holder" in section 1304.158 clearly creates a private right of action for consumers to enforce their right to void a service contract. The defendants do not dispute Davis's interpretation of section 1304.158. The defendants argue, however, that even if a private right of action exists under section 1304.158, such a right does not extend to section 1304.157. We agree.

■ When determining whether a private cause of action may be derived from a statutory provision, our duty is to ascertain the drafters' intent. *See Brown v. De La Cruz,* 156 S.W.3d 560, 563 (Tex.2004). We discern intent first from the plain and common meaning of the statute's words. *See Texas Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004).

We read the statute as a whole and give meaning to the language consistent with other provisions in the statute. *Id.* Although in some cases it may be desirable to imply a private right of action to provide remedies thought to effectuate the purpose of the statute, ultimately we must determine whether the drafters intended to create such a private remedy. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Brown,* 156 S.W.3d at 567; *Linick v. Employers Mut. Cas. Co.,* 822 S.W.2d 297, 300 (Tex.App.-San Antonio 1991, no writ) (where intent of legislature is clear, it will be given effect even if result appears harsh or ill-advised).

■ Nothing in the plain language of section 1304.157 provides a private right of action for an allegedly aggrieved person to seek damages or otherwise enforce the section's requirements. Furthermore, the structure of the Act shows that it is the responsibility of the executive director of the Texas Department of Licensing and Regulation and the Texas Commission of Licensing and Regulation to enforce the provisions of the Act. Section 1304.202 states the executive director may institute an action for injunctive relief to restrain a violation or a threatened violation of the Act. TEX. OCC.CODE ANN. § 1304.202 (Vernon 2004). The section also allows the executive director to institute an action for a civil penalty. *Id.* Section 1304.007 gives the executive director the power to "investigate a provider, administrator, or other person as necessary to enforce this chapter and protect service contract holders in this state." *Id.* § 1304.007. Finally, Section 1304.201 states that "[o]n a finding that a ground for disciplinary action exists under this chapter, the commission may impose an administrative sanction, including an administrative penalty as provided by Subchapter F, Chapter 51." *Id.*

§ 1304.201. This type of statutory framework demonstrates an intent by the legislature to give administrative agencies the power to enforce the provisions of the chapter rather than private parties. *See Cole v. Huntsville Mem'l Hosp.,* 920 S.W.2d 364, 372 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (disapproved on other grounds by *Brown,* 156 S.W.3d at 567).

Section 1304.158 is an apparent exception to the SCRA's scheme of administrative enforcement. Under that section, the service contract provider is liable *to the service contract holder* for a monthly penalty if it does not timely refund the purchase price to the contract holder after the contract is voided in accordance with section 1304.157. Tex. Occ.Code Ann. § 1304.158 (Vernon 2004). Section 1304.157 contains no similar language, however, that would provide a private right of action to the contract holder.

Davis argues that sections 1304.157 and 1304.158 would be rendered meaningless if no private right of action were allowed under 1304.157 because a service provider could simply avoid the statutory requirements and penalties that would be owed to the contract holder under 1304.158 by omitting the contract language prescribed by section 1304.157, as was done in this case. First, we note that nothing in 1304.158 requires the service contract to contain the contract language prescribed by 1304.157 for the contract holder to return the contract and become entitled to a full refund and monthly penalties. Under the terms of section 1304.158, if the contract holder returns the contract within the time periods set forth in section 1304.157, the contract holder may enforce his rights under 1304.158 regardless of the language contained in his contract.[2] *See id.*

Second, even if recovery under section 1304.158 was not available to those persons who purchased contracts omitting the statutory language, which may be the practical result based on lack of notice of the statutory time periods for contract cancellation, the absence of a private right of action under section 1304.157 does not render either section 1304.157 or section 1304.158 meaningless. If a contract holder signs a contract that does not contain the required language, he may still cancel the contract under the terms to which he agreed.[3] In addition, the contract holder may file a complaint with the Texas Department of Licensing and Regulation alerting the administrative authorities to the fact that the provider is offering contracts that do not contain the required statutory language. Indeed, the Texas Department of License and Regulation specifically lists the failure to include the language required by section 1304.157 as a Class B violation with a punishment range of "$500 to $3,000 and/or up to 6 month probated suspension" for a first violation to "$3,000 to 5,000 per day not corrected plus 1 year full suspension up to revocation" for a third violation.[4]

---

**2.** Davis does not allege he returned his service contract to the defendants within either time period set fort in section 1304.157.

**3.** Davis does not argue he was misled with respect to the content of the service contract to which he agreed, including the terms under which he could cancel his contract. He argues only that the terms to which he agreed should not have been offered pursuant to section 1304.157.

**4.** In both their brief on appeal and their motion for summary judgment in the trial court below, the defendants cite to the website for the Texas Department of Licensing and Regulation. *See* Service Contract Providers Penalties and Sanctions, *http://www.license.state.tx. us/enforcement/scpsanctions.htm.* Davis does not dispute the accuracy of the website's list of the penalties and sanctions applicable to service contract providers.

Accordingly, a service contract provider may not avoid paying penalties by failing to include the language required by section 1304.157. The penalties are simply paid to an administrative agency rather than to the contract holder. These penalties are intended to ensure future compliance with section 1304.157. Once such compliance is secured, the full refund and monthly penalties mandated by section 1304.158 become available to future contract holders. The obligations of the administrative agencies and the rights of private parties work in tandem to ensure compliance with, and the effectiveness of, both sections of the Act.

It is clear, based on the language of section 1304.157 and statutory structure of the SCRA, that the legislature intended to entrust the task of regulating the content of service agreements to the Texas Department of Licensing and Regulation and the Texas Commission of Licensing and Regulation. This task is entirely different from enforcing the terms of an agreement to which one is a party as is addressed in section 1304.158. We conclude the trial court was correct, therefore, in holding that Davis had no standing to assert a claim under section 1304.157.

## IV.

In addition to challenging the trial court's holding on his standing to assert a claim under section 1304.157, Davis also contends the trial court erred in granting summary judgment on his claims for "equitable breach of contract remedies for recission or reformation of the subject service contract" and his claims under the Texas Deceptive Trade Practices Act. Davis argues these claims are "independent and unaffected by [the defendants'] contention that there is no private right of action under the SCRA" and, therefore, it was error for the trial court to dismiss them.

■ Davis's claims for equitable remedies based on a common law breach of contract theory merely restate his assertion that the defendants' service contracts are illegal because they fail to include the required statutory language regarding cancellation. In other words, Davis attempts to achieve indirectly through a common law contract action what he cannot do directly under the statute. As the defendants noted in their motion for summary judgment, however, where the legislature creates a statutory framework to secure performance of and compliance with a statute, it is "the reasonable implication that the legislature meant for only the statutory remedies to be applied, and did not mean for courts to refuse to enforce contracts, which were not declared void or unenforceable, though in contravention of the statute." *See Borger v. Brand,* 131 Tex. 614, 118 S.W.2d 303, 306 (1938). Nothing in the SCRA renders a contract that fails to comply with section 1304.157 illegal, unenforceable, or void. Accordingly, Davis cannot pursue claims for equitable relief based on a violation of section 1304.157. *See SCI Tex. Funeral Servs. v. Hijar,* 214 S.W.3d 148, 156–7 (Tex.App.-El Paso 2007, pet. denied). Similarly, Davis cannot create a private right of action where the legislature did not intend for one to exist by recasting his claims under the SCRA as a DTPA action. *Cf. id.* at 154 (plaintiff lacked standing to bring other claims based on violation of federal rule which provided no private right of action). Accordingly, to the extent Davis's contract and DTPA claims are based on a violation of section 1304.157 of the SCRA, the trial court correctly dismissed them.

■ Davis further argues, however, that he asserted claims for relief based on the service contract's arbitration provision that were not founded on any alleged violation

of the SCRA. A review of Davis's petition shows that he alleged he was entitled to a declaratory judgment and other relief based his contention that the service contract's arbitration provision was illusory. Nothing in the defendant's motion for summary judgment addressed these claims. And nothing about the claims indicate that they are based on a violation of section 1304.157 of the Act. The trial court erred, therefore, in granting summary judgment on these claims. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).

Based on the foregoing, we reverse the trial court's judgment to the extent it dismisses Davis's claims that relate to the service contract's arbitration provision. We affirm the trial court's judgment in all other respects.