**Affirm and Opinion Filed February 23, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-01447-CV**
_____

**TEXAS MEDICINE RESOURCES, LLP; TEXAS PHYSICIAN RESOURCES, LLP; AND PEDIATRIC EMERGENCY MEDICINE GROUP, LLP, Appellants**

**V.**

**MOLINA HEALTHCARE OF TEXAS, INC., Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-14467**

## OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Schenck

Texas Medicine Resources, LLP, Texas Physician Resources, LLP, and Pediatric Emergency Medicine Group, LLC (collectively, "Physicians") appeal the trial court's order granting Molina Healthcare of Texas, Inc.'s ("Molina") plea to the jurisdiction. Physicians assert the trial court erred in dismissing their claims because they have standing to assert same and their complaints present a justiciable controversy. We affirm the trial court's order.

## BACKGROUND

Physicians are medical provider groups composed of doctors who staff emergency departments at hospitals and freestanding emergency medical care centers. Physicians assert they provide emergency care without regard to patients' financial standing, whether the patients have healthcare coverage or—where the patient has coverage—whether the Physicians have contractual relationships with the patient's insurance carriers.

Molina is a Health Maintenance Organization ("HMO") that issues Health Insurance Exchange ("HIX") plans.[1] Physicians are "non-network physicians" relative to Molina, meaning there is no written contract establishing the rates which Molina will pay for emergency medical care Physicians provide to Molina's enrollees. Thus, pursuant to the emergency care statute applicable to HMOs, Molina is to "pay for emergency care performed by [Physicians] at the usual and customary rate."[2] TEX. INS. CODE § 1271.155(a).

Physicians claim to have provided emergency medical care to more than 3,800 patients enrolled in Molina's HIX plans between January 2017 and September 2018.

---

[1] HIX plans are created under the federal Affordable Care Act ("ACA"), are offered primarily for low income individuals, and are sold through the federal government's exchange. Molina's HIX plans must be approved as HMOs by the Texas Department of Insurance and separately approved as Qualified Health Plans by the Centers for Medicare and Medicaid Services. *See* TEX. INS. CODE § 843.071; 45 C.F.R. § 155.1010. The ACA strives to provide affordable insurance for underserved citizens.

[2] If a non-network physician or provider is to be compensated based on usual and customary charges, then the methodology must be based on generally accepted industry standards and practices for determining the customary billed charge for a service, and fairly and accurately reflect market rates, including geographic differences in costs. 28 TEX. ADMIN. CODE § 11.1161(f)(1).

They billed Molina for the services. Dissatisfied with the payments they received, Physicians sued Molina seeking judicial resolution of their claim that Molina's reimbursement regime under Medicare–Medicaid programs, as implemented through the federal Affordable Care Act and corresponding federal and state regulations, is inadequate. Specifically, Physicians urge that the rates fail to satisfy the obligation to pay the "usual and customary" rate for services under an administrative regulation that has been codified as section 1271.155 of the Texas Insurance Code. They go on to argue that section 1271.155 implies a private cause of action and, thus, a justiciable claim to be presented to lay jurors. This theory has not met success with other courts. Molina urges that the regulation and resulting legislation are part of a broader comprehensive regulatory regime that courts have uniformly held affords no private right of action and presents no justiciable issue, or both. In addition, Physicians claim they are entitled to recover the value of the services provided to Molina's HIX plan enrollees under the equitable theory of quantum meruit and seek a declaration that the jury's finding on the usual and customary rate will be the rate Molina pays Physicians in the future. Molina urges that these claims are all anchored in the same regulatory regime and, accordingly, present a nonjusticiable controversy.

Molina filed a plea to the jurisdiction asserting Physicians lack standing to assert claims under the emergency care statute, the unfair settlement practices statute and the prompt payment statute; that no direct relationship exists between Physicians

–3–

and Molina to support a quantum meruit claim; and no justiciable controversy exists to support Physicians' claim for declaratory relief regarding future claims. The trial court granted Molina's plea and dismissed Physicians' claims in their entirety. This appeal followed. For reasons that follow, we join our colleagues in federal courts in finding these claims to be nonjusticiable at this time. *See Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, No. 3:18-CV-00425-X, 2020 WL 7259222, at \*1–2, 6–8 (N.D. Tex. Dec. 10, 2020); *Apollo MedFlight, LLC v. Bluecross Blueshield of Tex.*, No. 2:18-CV-166-Z-BR, 2019 WL 4894263, at \*2–3 (N.D. Tex. Oct. 4, 2019).

## DISCUSSION

### I. Standard of Review

A plea to the jurisdiction challenges a court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When, as in this case, the plea challenges the claimant's pleadings, we determine whether the claimant has pleaded facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001). Thus, a plea to the jurisdiction is a proper vehicle to challenge a plaintiff's standing to maintain suit. *Vernco Constr.,*

*Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015). Ripeness is also a component of subject-matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). In order for a claim to be ripe, there must be "a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). The plaintiff bears the burden to plead and establish facts affirmatively showing the court has subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see also Bland*, 34 S.W.3d at 554.

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Miranda*, 133 S.W.3d at 226. In our review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then the trial court may grant the plea to the jurisdiction without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

## II. Physicians' Claim Molina Violated the Emergency Care Statute

In their first issue, Physicians urge the trial court erred in dismissing their claim seeking to enforce the payment obligation set forth in the emergency care statute, specifically section 1271.155 of the Texas Insurance Code. Section 1271.155 requires HMOs to "pay for emergency care performed by non-network

–5–

physicians or providers at the usual and customary rate or at an agreed rate." INS. CODE § 1271.155(a).

When a private cause of action is alleged to derive from a statutory provision, as it is in this case, our duty is to ascertain the drafters' intent. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 260 (Tex. 2002). The legislature can indicate its intent to create a private right of action either by including an express provision in the statutory text or through implication. *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). Physicians concede that section 1271.155 does not expressly confer a private right of action but contend that it does so by implication because the requirement that the HMO make the payment *directly* to the physician or provider establishes the statute was enacted to benefit healthcare providers; and thus, claim Physicians, they are entitled to enforce the payment obligation. *See* INS. CODE § 1271.155(f). The statute, as it existed at the time Physicians provided medical services to Molina enrollees, did not contain a provision that HMOs pay the physician or provider *directly*. That provision, subsection (f) to section 1271.155, was enacted in 2019, after Physicians provided the services at issue in this case, and it applies to health care or medical services provided on and after January 1, 2020. Consequently, Physicians' reliance on direct payment language subsequently added to the statute is misguided.[3]

---

[3] As noted below, the legislature also included a comprehensive regulatory compliance regime by which claims, direct and otherwise, might be resolved.

–6–

How Texas addresses issues concerning the availability of and payment for emergency medical services involves important policy considerations that are primarily for the legislature, not the courts. The unique bifurcated structure of the Texas court system calls for particular deference to legislative choices regarding the method of enforcement of Texas statutes. *Brown*, 156 S.W.3d at 566. The legislature may delegate enforcement to executive departments, administrative agencies, regulatory commissions, local governments and districts, as well as to the criminal or civil courts. *Id.* at 566–67. We are obligated by separation of powers principles to exercise restraint, strictly construe statutory enforcement schemes, and imply a private cause of action to enforce a statute *only* when the legislature's intent is clearly expressed from the language as written.[4] *Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.) (citing *Brown*, 156 S.W.3d at 567). Although in some cases it may be desirable to imply a private right of action to provide remedies thought to effectuate the purpose of the statute, ultimately we must determine whether the drafters intended to create such a private remedy. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16 (1979); *see also Brown*, 156 S.W.3d at 567 (rejecting rule of "necessary implication" that provides when a legislative enforcement scheme fails to adequately

---

[4] Physicians' references to principles of statutory construction ignore the relevant legal standard applicable to inquiries into private rights of action. Because grants of private rights of action implicate the separation of powers, the rules are applied strictly in that context.

protect intended beneficiaries, the courts must imply a cause of action to effectuate the statutory purposes); *Linick v. Emp'rs Mut. Cas. Co.*, 822 S.W.2d 297, 300 (Tex. App.—San Antonio 1991, no writ) (where intent of legislature is clear, it will be given effect even if result appears harsh or ill-advised). Moreover, in cases such as this, where the relevant statutes are silent on a private right of action but provide detailed administrative enforcement mechanisms, we may presume that the legislature intended that a separate private right of action not be included. *Witkowski*, 181 S.W.3d at 831; *see also Middlesex Cty. Sewage Auth. v. Nat'l Clammers Ass'n*, 453 U.S. 1, 14 (1981) (when a statute includes elaborate enforcement provisions, it cannot be assumed that Congress authorized by implication additional judicial remedies for private citizens).

The insurance industry is heavily and comprehensively regulated by both federal and state law. Most sections of the Texas Insurance Code are expressly enforced by the Texas Attorney General or the Texas Department of Insurance. Moreover, where the legislature has intended to provide a private right of action under the insurance code, it has made a clear expression of that intent. *See, e.g.*, INS. CODE § 541.151.[5] By law, federal and state regulators must certify Molina's HIX

---

[5] Section 541.151 provides "a person who sustains damages may bring an action against another person for those damages caused by the other person engaging in an act or practice (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment." INS. CODE § 541.151.

plans before they can be offered to consumers. 45 C.F.R. § 155.1000; INS. CODE §843.071. Federal regulators have the authority to remove Molina's HIX plans from the healthcare exchanges for non-compliance with federal law. 45 C.F.R. § 155.1010(a)(2). At the state level, the legislature has delegated enforcement powers over HMOs to the Texas Department of Insurance. *See* INS. CODE § 843.461.

The Texas Department of Insurance, in turn, requires HMOs, such as Molina, to maintain dispute resolution processes and expressly permits dissatisfied persons to make complaints directly to the department, including for violations of section 1271.155. *Id.* §§ 843.251–.261, 843.282. In fact, the commissioner of insurance may suspend or revoke a certificate of authority issued to an HMO, impose sanctions, issue a cease and desist order, or impose administrative penalties. *Id.* §§ 82.051, 843.082, 843.461(a). In addition, the legislature has empowered the commissioner to direct the holder of a permit, license, certificate of authority, certificate of registration, or other authorization issued or existing under the commissioner's authority or the insurance code to make complete restitution to each Texas resident, each Texas insured, and each entity operating in this state that is harmed by a violation of, or failure to comply with, the Texas Insurance Code or a rule of the commissioner. *Id.* §§ 82.052, 82.053(a). The commissioner is empowered to adopt rules necessary to implement the provisions governing HMOs and to meet the minimum requirements of federal law, including regulations. *Id.* § 1271.004(d). Accordingly, the Texas Insurance Code provides a distinct and

comprehensive enforcement mechanism, but it is not directed to the courts. Accordingly, we presume the legislature did not intend for a private right of action to be included.

Moreover, Physicians' claim that section 1271.155 impliedly authorizes a private cause of action because it mandates payment to an identifiable group and attempt to analogize the emergency care statutes to the Texas Constitution's prohibition on takings without just compensation are unavailing. The Texas Supreme Court has noted the Texas Constitution provides a party whose property has been taken by the government with "a textual entitlement to compensation." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). As the *Bouillion* opinion makes clear, however, the Takings Clause creates a limited right to relief because it requires the State to pay just compensation—but the court explicitly cautioned the "limited context" of the Takings Clause and stated that its holding "cannot be interpreted beyond its context." *Id*. Accordingly, Physicians' reliance on the existence of a right of action under the constitution's takings clause for the proposition that a private right of action can be implied where a statute is enacted to benefit a particular group of persons is misplaced. *Coll v. Abaco Operating LLC*, No. 2:08-CV-345-TJW, 2011 WL 1831748, at *4 (E.D. Tex. May 12, 2011).

Physicians' reliance on *Merkle v. Health Options, Inc.*, 940 So. 2d 1190 (Fla. Dist. Ct. App. 2006), an intermediate appellate opinion interpreting Florida's emergency care statute, is unpersuasive. In reaching the conclusion that an implied

–10–

private right of action existed under the Florida statute, the *Merkle* court cited the rule articulated by the Florida Supreme Court "that 'because the legislature enacted a statute that clearly imposes a duty and because the intent of the section is to preclude retaliatory discharge, the statute confers by implication every particular power necessary to insure the performance of that duty.'" *Id.* at 1196 (quoting *Smith v. Piezo Tech. & Prof'l Adm'rs,* 427 So. 2d 182, 184 (Fla. 1983)). Thus, *Merkle* adheres to the "necessary implication test," which the Texas Supreme Court explicitly rejected in *Brown*. *Brown*, 156 S.W.3d at 567. Texas now applies a far stricter rule of construction in determining whether a private right of action exists: "[A] right of enforcement should not be implied simply because the statute 'fails to adequately protect intended beneficiaries.'" *Witkowski*, 181 S.W.3d at 831 (quoting *Brown,* 156 S.W.3d at 567). The fact that a person claims to have suffered harm from the violation of a statute does not automatically give rise to a private cause of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).

In addition, Physicians' reliance on *Brown v. De La Cruz* and *Davis v. Hendrick Autoguard, Inc.* to support their implied enforcement right argument is unfounded because in each of those cases the statutory provision Physicians rely upon stated the seller or provider is *liable* to the purchaser or contracting party. *Brown*, 156 S.W.3d at 561 (property code provision which directs that "a seller is 'liable to the purchaser for . . . liquidated damages' . . . clearly provides a private cause of action for purchasers"); *Davis*, 294 S.W.3d 835, 837–39 (Tex. App.—

Dallas 2009, no pet.) (statutory provision which dictated that if a "provider does not pay the refund or credit the service contract holder's account . . ., the provider is liable to the service contract holder" reflected legislative intent to imply a private right of action).

Moreover, the cases squarely addressing the issue, while not binding on this Court, applied *Brown* and properly analyzed the Texas authorities in concluding that there is no private right of action under the Texas emergency care statutes[6] because those provisions "do not clearly express a legislative intent to create such a right." *Angelina*, 2020 WL 7259222, at *6; *Apollo MedFlight*, 2019 WL 4894263, at *2–3.

In addition, section 1271.155's legislative history confirms the statute was intended to function as part of a broader regulatory scheme and, as it existed through 2019, was not intended to create a private cause of action. *See Brown*, 156 S.W.3d at 568 ("legislative history may sometimes provide insight as to legislative intent"). What is now section 1271.155(a) first appeared as an amendment to the Texas Administrative Code on November 24, 1995. 28 TEX. ADMIN. CODE § 11.204. That regulation governed the certificate of authority to operate as an HMO and listed the items an HMO must include in an application for a certificate, and subsection (20)

---

[6] Texas Insurance Code sections 1271.155 (HMO plans), 1301.0053 (EPO plans), and 1301.155 (PPO plans) are collectively referred to as the emergency care statutes. *Apollo MedFlight*, 2019 WL 4894263, at *1. Only section 1271.155 is implicated here.

–12–

included the same "usual and customary rate" language at issue here. *Id.*[7] In 1997, the legislature passed Senate Bill 385 and codified this rule as section 20A.04 of the Texas Insurance Code. *See* 75th Leg., R.S., ch. 1026 (S.B. 385). In 2001, the Texas House of Representatives passed House Bill 2811, which codified the Texas Insurance Code and moved the relevant language from section 20A.04 to section 20A.9Y. *See* 77th Leg., R.S., ch. 1419 (H.B. 2811). House Bill 2811 retained the payment language but moved the certificate of authority reference to another section of the code. That move was intended to be "nonsubstantive." *See id.* In 2003, the Texas House of Representatives passed House Bill 2922, which recodified the Texas Insurance Code and moved section 20A.9Y to section 1271.155(a). *See* 78th Leg., R.S., ch. 1274 (H.B. 2922). This amendment was also "nonsubstantive." *See id.*

In 2019, the legislature adopted amendments to the Texas Insurance Code, to be effective prospectively. *See* Acts 2019, 86th Leg., ch. 1342 (S.B. 1264). Among other things, Senate Bill 1264 amended section 1271.155 to add subsection (f), which for the first time required HMOs to pay non-network providers "directly," and subsection (g), which substantially limits the right of non-network providers to bill patients for the difference between the billed amount and the paid amount. The bill

---

[7] More particularly, subsection 20 provided, in part, for "documentation demonstrating that the HMO will pay for emergency care services performed by non-network physicians or providers at the negotiated or usual and customary rate . . . ."

–13–

also included a detailed dispute resolution process in chapter 1467 of the insurance code.

As we read Physicians' brief, they appear to present a claim arising only in connection with payments sought prior to the effective date of the 2019 amendments. Nevertheless, the amendments appear to offer little support to the contention that the legislature intended to create a general private cause of action. On the contrary, the legislature directed the parties away from the court to an administrative arbitrator who would appear to function in lieu of the Texas Department of Insurance itself. INS. CODE § 1467.083. Unlike traditional arbitration in lieu of plenary judicial proceedings, the parties to this administrative proceeding are not directed to participate by their own consent, a feature indispensable to arbitration under either the Texas or federal arbitration acts,[8] but by legislative decree with the arbitrator empowered to act in the place of the Texas Department of Insurance and pursuant to the mandatory administrative process we have outlined above. More notably, when the arbitration is concluded, the parties may come to court, not for confirmation or vacatur pursuant to the general arbitration acts, but for the familiar "substantial evidence" review that would follow from an administrative appeal from the decision of an administrative agency under the Administrative

---

[8] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("arbitration is 'a matter of consent, not coercion'"); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (orig. Proceeding) (same).

Procedure and Texas Register Act—or, in this case, the Texas Department of Insurance. *See* TEX. GOV'T CODE § 2001.175.

As Senate Bill 1264 does not apply retroactively to any claim preceding its enactment and does not clearly create the plenary judicial proceeding Physicians urge, it is much like the amendment to the property code in *Brown*, which the Texas Supreme Court determined did not clarify the legislature's prior intent; rather, it simply reaffirmed that the statute had not allowed for a private right of action. *See Brown*, 156 S.W.3d at 565.

Considering the text of section 1271.155, the legal standard applicable to legislative intent to create private rights of action, and the legislative history of section 1271.155, we conclude the version of section 1271.155 applicable to this case does not create a private right of action in favor of non-network physicians or providers. Accordingly, the trial court did not err in dismissing Physicians' section 1271.155 claim. We overrule Physicians' first issue.

### III. Violations of the Unfair Settlement Practices and Prompt Payment Statutes

In their second issue, Physicians contend the trial court erred in dismissing their claims under the unfair settlement practices statute (specifically, sections 541.060 and 541.151 of the Texas Insurance Code) and the prompt payment statute (chapter 843 of the Texas Insurance Code) because they are within the class of persons expressly authorized to bring claims under the statutes.

–15–

## A. Unfair Settlement Practices

Physicians assert they have standing to bring an unfair settlement practices claim both independently and as assignees of the Molina enrollees' benefits. Molina counters that Physicians do not have standing to bring the claim because they lack any direct basis for their own standing and any claim the Molina enrollees may have under chapter 541 is unassignable under Texas law. We agree with Molina.

In bringing their unfair settlement practices claim, Physicians rely on the express provision for a private cause of action under section 541.151 and claim Molina's violation of section 1271.155 constitutes a violation of section 541.060 (a)(2), allowing for redress under section 541.151. Section 541.151 provides:

> a person who sustains damages may bring an action against another person for those damages caused by the other person engaging in an act or practice (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

INS. CODE § 541.151. Subchapter B provides, in part:

> it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to *a claim by an insured or beneficiary* . . . failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear.

*Id.* § 541.060(a)(2)(A) (emphasis added).

As an initial matter, Physicians are not insureds or beneficiaries to which the unfair settlement practices statute applies. *See id.* § 541.151. In addition, Physicians' asserted independent unfair settlement practices claim is premised on a violation of section 1271.155, which we have already concluded to be jurisdictionally unsupported.

As to Physicians' assertion they are entitled to maintain an unfair settlement practices claim as assignees of Molina enrollees' benefits, that assertion fails because the overwhelming weight of persuasive authority holds that claims under chapter 541 of the Texas Insurance Code may not be assigned. *Angelina*, 2020 WL 7259222, at *7; *Gilmour v. Blue Cross and Blue Shield of Ala.*, No. 4:19-CV-160, 2020 WL 2813197, at *8 (E.D. Tex. May 29, 2020). Although the Texas Supreme Court has not directly addressed the issue, it has held that Texas Deceptive Trade Practices Act claims are unassignable because such claims are fundamentally personal and punitive. *PPG Indus., Inc. v. JMB/Houst. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 (Tex. 2004). Drawing on *PPG Industries*, several federal courts have held that claims under chapter 541 of the Texas Insurance Code are also personal and punitive and likewise are unassignable. *See, e.g.*, *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, No. A-10-CA-362, 2011 WL 9879170, at *8–9 (W.D. Tex. Apr. 27, 2011) (collecting cases), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012); *see also Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-00005(RCL), 2016 WL 5942327, at *6 (W.D. Tex. Oct. 12, 2016). Several Texas intermediate

–17–

courts of appeals, including this Court, have concluded Chapter 541 provides remedies that are personal and punitive in nature. *See Goin v. Crump*, No. 05-18-00307-CV, 2020 WL 90919, at \*15 (Tex. App.—Dallas Jan. 8, 2020, no pet.) (mem. op.) (concluding trial court erred in ordering the turnover of Chapter 541 claims to receiver); *Lee v. Rogers Agency*, 517 S.W.3d 137, 146 n.3 (Tex. App.—Texarkana 2016, pet. denied) (noting insurance code claims are not assignable for the reasons discussed in *PPG*). Therefore, Physicians lack standing as assignees to bring a claim against Molina for unfair settlement practices.

## B. Prompt Payment

Physicians' assertion the trial court erred in dismissing their prompt payment statute claim is likewise unavailing. While section 843.351 of the Texas Insurance Code requires prompt payment of claims when a non-network provider renders medical care related to an emergency or its attendant episode of care as required by state or federal law, the penalties under the prompt payment statute are not available to out-of-network providers. INS. CODE §§ 843.342; 843.351, 1301.069. Section 843.342 provides for penalties based on the billed charges, as submitted on the claim, and the contracted rate. *Id.* § 843.342. The penalty structure depends, for its calculation, on the contracted right of reimbursement to the provider. The legislature could have specified the manner for calculating a penalty for non-network providers who do not have a contracted rate but it failed to do so. Because out-of-network physicians and providers do not have contracted rates, there is no basis for the

–18–

statutory penalties. *See Emerus Hosp. v. Health Care Serv. Corp.*, No. 1:13-cv-8906, 2020 WL 1675665, at *3 (N.D. Ill. Apr. 6, 2020); *see also* TEX. ATT'Y GEN. Op. No. KP-0250, at 6 (2019) (concluding out-of-network physicians do not have a right to penalties under the prompt payment statute).[9]

Physicians' claim under the prompt payment statute is also predicated on the viability of their claim under section 1271.155, which, as noted above, fails. Accordingly, we conclude Physicians cannot seek penalties under the prompt payment statute and thus the trial court did not err in dismissing Physicians' claim against Molina for violation of the prompt payment statute.

We overrule Physicians' second issue.

## IV. Quantum Meruit and Declaratory Judgment

In their third issue, Physicians claim principles of quantum meruit and declaratory judgment afford them alternative means to redress Molina's alleged underpayment for services.

---

[9] The legislature explicitly requested an attorney general opinion on the issue of penalties under the prompt payment statute. Thus, the "usual deference paid to formal opinions of state attorney generals is accentuated," *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 850 F.2d 224, 228 (5th Cir. 1988), and Texas courts generally accord great weight to such opinions. *See Plainview Indep. Sch. Dist. v. Edmonson Wheat Growers, Inc.*, 681 S.W.2d 299, 302 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.).

## A. Quantum Meruit[10]

Physicians' equitable claim of quantum meruit seeks to enforce the same payment obligations they cannot enforce under the emergency care statute. Accordingly, the claim fails because the judiciary is precluded from creating a claim in equity that merely repackages a statutory claim the legislature declined to create. *See Davis*, 294 S.W.3d at 840 ("[P]laintiff attempts to achieve indirectly what he cannot do directly under the statute."). In addition, a comprehensive regulatory scheme has been enacted to regulate plans created under the Affordable Care Act, signaling a pre-emption of state law claims. *See, e.g.*, *English v. GE Co.*, 496 U.S. 72, 78 (1990) (in absence of explicit statutory language, state law is pre-empted where it regulated conduct in a field that Congress intended the Federal Government to occupy exclusively).

Moreover, the trial court properly dismissed Physicians' quantum meruit claim because, contrary to Physicians' assertion, the facts alleged in Physicians' petition do not establish they rendered valuable services to Molina. Merely stating the services Physicians provided were for Molina's benefit would be insufficient to state a quantum meruit claim. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (it is not enough that plaintiff recite

---

[10] Quantum meruit is an equitable remedy based on an implied promise to pay for benefits received. *See Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). To recover on a claim of quantum meruit a plaintiff must show (1) he rendered valuable services, (2) for the defendant, (3) the defendant accepted his services, and (4) he rendered the services under circumstances that would reasonably notify the defendant he expected to be paid. *Smith v. Deneve*, 285 S.W.3d 904, 915 (Tex. App.—Dallas 2009, no pet).

certain talismanic words in their pleading because allegations that are mere conclusions are entitled to no deference). The non-conclusory facts alleged—those entitled to deference—reflect that the benefits at issue are healthcare services provided to the insured patients, not Molina. Where, as here, a plaintiff renders services to an insured, courts applying Texas law have held the plaintiff does not have a quantum meruit claim against the insurer because any services rendered only indirectly benefit the insurer, if they benefit the insurer at all. *See Angelina*, 2020 WL 7259222, at *3 (services rendered to an insured are not directed to or for the benefit of the insurer); *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:10-CV-2652-L, 2015 WL 5603711, at *13 (N.D. Tex. Sept. 23, 2015) (holding doctors who rendered medical services to insured patients had no quantum meruit claim against patients' insurer because "any possible benefit conferred on [insurer] was too attenuated and indirect"); *Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex.*, No. 6:14-cv-952-JDL, 2015 WL 13649419, at *7 (E.D. Tex. May 28, 2015) (dismissing quantum meruit claim against insurer for medical services rendered to insureds); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 n.11 (E.D. Tex. 2011) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit." (quoting *Travelers Indem. of Conn. v. Losco Grp.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)).

In this case, the services for which Physicians seek additional compensation were provided for the benefit of and accepted by Molina's insureds, not Molina. If Molina received any benefit, it was too indirect and attenuated to support a quantum meruit claim operating in parallel to but outside of the legislature's regulatory scheme. *See Encompass Office Sols.*, 775 F. Supp. 2d at 966 & n.11. Because Physicians cannot rebrand their defunct section 1271.155 claim as a quantum meruit claim and cannot aver that valuable services were rendered to and accepted by Molina, the trial court did not err in dismissing Physicians' quantum meruit claim.

## B. Declaratory Judgment

Under the Texas Uniform Declaratory Judgments Act ("the Act"), a person whose rights, status, or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE § 37.004(a). The Act is not a grant of jurisdiction, but merely a procedural device for deciding cases already within a court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (quoting *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994)).

"A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank*, 907 S.W.2d at 467 (citing *Tex. Ass'n of Bus.,* 852 S.W.2d at 446). The Act gives the court no power to pass upon

–22–

hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy. *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded by constitutional amendment on other grounds as stated in Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997). Thus, a declaratory judgment action cannot resolve issues not yet mature and subject to change. *See Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39, 41–42 (Tex. App.—Houston [1st Dist.] 1995, no writ).

Here, Physicians seek a declaratory judgment as to the rate Molina should pay under section 1271.155(a) for services provided to Molina's insureds in the future. Because Physicians lack standing to enforce section 1271.155(a) directly, they likewise lack standing to assert that claim indirectly under the Declaratory Judgments Act. *See Reid v. Aransas Cty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) ("[A] plaintiff cannot use the Declaratory Judgments Act to create a private right of action where none exists.").

In addition, Physicians seek a declaration concerning claims for payment for medical services that have not yet been performed. The adjudication of hypothetical future claims, with unknown patients and unknown medical procedures, does not present a real controversy. The controversy is not ripe for consideration. *Burch*, 442 S.W.2d at 333.

Moreover, future disputes concerning the "usual and customary rates" will be subject to the dispute resolution process set forth in chapter 1467 of the insurance

code, and a judicial declaration concerning same in advance of a party's employment of that process would contravene the legislative mandate that a court's review of an arbitrator's decision is to determine whether it is supported by substantial evidence.

Because the Declaratory Judgments Act neither creates jurisdiction nor permits the rendition of advisory opinions, the trial court properly dismissed Physicians' claim for declaratory relief.

We overrule Physicians' third issue.

**CONCLUSION**

We affirm the trial court's order granting Molina's Plea to the Jurisdiction.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

191447F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TEXAS MEDICINE RESOURCES, LLP; TEXAS PHYSICIAN RESOURCES, LLP; AND PEDIATRIC EMERGENCY MEDICINE GROUP, LLP,, Appellant

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-14467. Opinion delivered by Justice Schenck. Justices Osborne and Partida-Kipness participating.

No. 05-19-01447-CV     V.

MOLINA HEALTHCARE OF TEXAS, INC., Appellee

In accordance with this Court's opinion of this date, the order of the trial court granting Molina Healthcare of Texas, Inc.'s plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee MOLINA HEALTHCARE OF TEXAS, INC. recover its costs of this appeal from appellant TEXAS MEDICINE RESOURCES, LLP; TEXAS PHYSICIAN RESOURCES, LLP; AND PEDIATRIC EMERGENCY MEDICINE GROUP, LLP.

Judgment entered this 23rd day of February, 2021.